# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

ANGELA MARROCCOLO individually
and as the parent and next friend of K.N.,

Plaintiff,

v.

6:24-CV-1091<br>(GTS/MJK)

MICHELLE CODDINGTON and UNKNOWN
HERKIMER COUNTY POLICE OFFICER,

Defendants.

---

ANGELA MARROCCOLO individually and o/b/o K.N., Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

**TO THE HONORABLE GLENN T. SUDDABY, U.S. DISTRICT JUDGE:**

On September 10, 2024, the pro se plaintiff filed a civil rights complaint pursuant to § 18 U.S.C. 1983 on behalf of herself and her minor child, K.N.  (Dkt. No. 1).  In addition to the complaint, plaintiff filed an application to proceed in forma pauperis ("IFP"), and a request for the issuance of a subpoena.  (Dkt. Nos. 2, 3).  On September 12, 2024, plaintiff filed an amended complaint and amended request that the court issue a subpoena.  (Dkt. No. 7, 8).

## I.   __IFP Application__

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. No. 2).  After reviewing her application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915.  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir.

2

2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678).  A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal."  *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.   <u>Amended Complaint</u>[1]

Plaintiff alleges that the claims in the amended complaint arise from the "unlawful seizure of [her daughter, K.N.,] by [d]efendant Michelle Coddington in May 17, 2017, without a warrant, court order, or exigent circumstances." (Amended Complaint ("AC") at 1) (Dkt. No. 7).  Defendant Coddington "is a Child Protective Services (CPS) worker employed by Herkimer County Child Protective Services[.]" (*Id.* at 2).  Plaintiff further alleges that defendant Coddington was accompanied by "unknown law enforcement officers" from the Herkimer County Police Department at the time of K.N.'s seizure.  (*Id.* at 2).  Plaintiff states that at the time of the seizure "K.N. was in the care of two other responsible adults (siblings)[.]"  (*Id.* at 3).

Plaintiff asserts violations of K.N.'s Fourth and Fourteenth Amendment rights. (AC at 1).  In addition, plaintiff alleges constitutional violations in her individual capacity.  (*See generally* AC).

## III.   <u>Plaintiff's Representation of C.T.M.</u>

"A litigant in federal court has a right to act as his or her own counsel." *Cheung v. Youth Orchestra Found.*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). "The statutory right to proceed pro se reflects a respect for the choice of an individual citizen to plead his or her own cause." *Id*. However, "a non-attorney parent must be

---

[1] Plaintiff represents that this matter is related to two other civil actions that were previously filed in this district - *Mulqueen v. Herkimer County Child Protective Services, et al.,* No. 6:22-CV-1301(BKS/MJK) and *Sochia v. Coddington, et al.*, No. 6:24-CV-1068 (BKS/TWD).  (*See* AC at 9). Upon review, the court notes that these actions appear to be asserted against at least one of the same defendants for similarly described conduct, but otherwise do not specifically relate to the underlying events alleged in this matter.

4

represented by counsel in bringing an action on behalf of his or her child." *Id*. This is

because the choice to appear pro se is not a true choice for minors who, under state law,

cannot determine their own legal actions. *Id*. (citing Fed. R. Civ. P. 17(b)).  Minor

children "are entitled to trained legal assistance so their rights may be fully protected."

*Cheung v. Youth Orchestra Found*., 906 F.2d at 61. Thus, the "court has an affirmative

duty to enforce the rule that a non-attorney parent must be represented by counsel when

bringing an action on behalf of his or her child."[2] *Fauconier v. Comm. on Special

Educ*., No. 02 Civ. 1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003), *aff'd sub

nom. Fauconier v. Comm. on Special Educ*., 112 F. App'x 85 (2d Cir. 2004).

Accordingly, in this case the non-attorney plaintiff may not appear pro se on behalf of

her minor daughter, and the amended complaint must be dismissed as asserted on

K.N.'s behalf.

---

[2] The Second Circuit has carved out limited exceptions to this general rule, including for claims filed on behalf of minors under the Individuals with Disabilities Education Act ("IDEA") and actions relating to social security benefits.  Liberally construed, plaintiff's complaint does not fall within any of the noted, limited exceptions.

## IV.   **Statute of Limitations**

Claims brought under Section 1983 generally must be filed within three years of the date a claim accrues.[3] Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).  Here, the underlying events giving rise to the amended complaint occurred in May 2017, over seven years prior to plaintiff filing this action. Plaintiff acknowledges that "the statute of limitations may have expired for the parent[.]"  (AC at 1).

Thus, in the absence of some basis for tolling or disregarding the limitations period,[4] the § 1983 claims asserted by plaintiff in her individual capacity are subject to

---

[3] The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5).

[4] Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). As the Second Circuit recognized in *Abbas*, New York law recognizes the equitable tolling doctrine where a plaintiff demonstrates that he was induced by fraud, misrepresentations, or deception to refrain from timely commencing an action, and that he acted with due diligence throughout the period to be tolled. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *see also Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).  Courts in this circuit have concluded that the removal of a child from a

dismissal as untimely asserted.[5] *See Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007) (explaining that a district court should not dismiss a complaint as time-barred without providing a *pro se* plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely); *see also Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds).

## V.    Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is

---

parent's custody does not "flow from a series of continuing wrongs" for purposes of applying the continuing violations doctrine to an otherwise time barred claim.  *See Williams v. Savory*, 87 F. Supp. 3d 437, 454 (S.D.N.Y. 2015); *Sevilla v. Perez*, No. 15-CV-3528, 2016 WL 5372792, at *3 (E.D.N.Y. Sept. 26, 2016).

[5] To clarify, any claims asserted on behalf of K.N. are not untimely, as they are tolled while she is a minor, and the applicable three-year statute of limitations will not start to run until she turns eighteen. *See Doe v. NYS Off. of Child. & Fam. Servs.*, No. 20-CV-1195, 2021 WL 2826457, at *8 (N.D.N.Y. July 7, 2021) (applying N.Y. C.P.L.R. 208(a)).

present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Any claims plaintiff is asserting on behalf of K.N. should be dismissed without prejudice because, as a pro se party, plaintiff cannot represent K.N. The court recommends dismissing K.N.'s claims without prejudice to plaintiff reasserting those claims with the assistance of counsel.  If the district court accepts this recommendation, plaintiff and/or K.N. are encouraged to explore the possibility of representation for K.N. by one of the various legal aid and/or lawyer referral services in this district, contacts for which can be found on the district court's webpage.[6]

With respect to those claims asserted by plaintiff individually, plaintiff has alleged no facts articulating any circumstances that prevented her from timely commencing suit.  However, now that plaintiff has been "made aware of the [statute] of limitations issue," *Muhammadali v. City of New York*, 795 Fed. App'x 70, 71 (2d Cir. 2020), she is entitled to an "opportunity to be heard" as to "whether [s]he might have meritorious tolling arguments." *Abbas*, 480 F.3d at 640. The Court therefore recommends dismissing plaintiff's individual capacity claims without prejudice and granting her leave to amend to include facts showing that the limitation period should be tolled. *Cf. id.* (finding error where a district court sua sponte "dismissed [a pro se plaintiff's] complaint [with prejudice] on the basis of an anticipated statute-of-

---

[6] See  https://www.nynd.uscourts.gov/legal-aid-referral-services.

limitations defense without granting [the plaintiff] notice and an opportunity to be heard" as to "whether he might have meritorious tolling arguments.").

WHEREFORE, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**, and it is

**RECOMMENDED,** that the district court **DISMISS** the amended complaint (Dkt. No. 7) as asserted on behalf of K.M. without prejudice, but without leave to replead until K.M. is properly represented by counsel or reaches the age of majority, and it is

**RECOMMENDED,** that the district court otherwise **DISMISS** the amended complaint (Dkt. No. 7) in its entirety, without prejudice to plaintiff filing a second amended complaint asserting plausible grounds supporting equitable tolling of the statute of limitations, and it is

**ORDERED,** that plaintiff's letter motions requesting court issued subpoenas (Dkt. Nos. 3, 8) be **DENIED** as moot, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[7]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

---

[7] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(e), 72.

Dated:  September 16, 2024

Mitchell J. Katz
U.S. Magistrate Judge

10

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 11 of 51

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]     On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 12 of 51

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]     Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]     The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]     The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]     The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment
**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 14 of 51

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 15 of 51

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoda*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 16 of 51

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 17 of 51

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]   The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at **4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at *9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 18 of 51

Houston v. Colerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]      The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]      The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 19 of 51

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

 **\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

## E. Failure to Respond to Grievances and Failure to Investigate

 **\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

**Houston v. Collerman**, Not Reported in Fed. Supp. (2016)

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 20 of 51

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury
"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS
Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion
**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]     Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]      If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for
publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

[1]     **Civil Rights** 🔑  **Criminal prosecutions**
        Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

        37 Cases that cite this headnote

[2]     **Conspiracy** 🔑  **Civil rights conspiracies**
        Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of

such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

347 Cases that cite this headnote

**\*103  UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

*SUMMARY ORDER*

**\*\*1**  Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

[1]  First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v.*

*Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We

conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

**\*\*2** **[2]**   Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no **\*105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

---

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk  Exxon Mobil Corp. v. Saudi Basic Industries Corp.,   U.S.,
March 30, 2005

2003 WL 21345549
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard FAUCONIER, Plaintiff,

v.

COMMITTEE ON SPECIAL EDUCATION, District
3, New York City Board of Education, Defendant.

No. 02 Civ.1050 RCC.
|
June 10, 2003.

**Synopsis**
Noncustodial parent sued special education committee under
Individuals with Disabilities Act (IDEA), challenging denial
of mainstream educational placement for student. Committee
moved to dismiss. The District Court, Casey, J., held that:
(1) nonattorney parent could not proceed pro se, representing
interests of student under IDEA, and (2) Rooker-Feldman
doctrine barred suit.

Case dismissed.

West Headnotes (2)

[1]    Infants ⚖  Schools and education

       Nonattorney parent could not proceed pro
       se to represent interests of student in suit
       under Individuals with Disabilities Education
       Act (IDEA) challenging school committee's
       decision to retain student in special private
       education setting rather than mainstreaming him.
       20 U.S.C.A. § 1400 et seq.

       12 Cases that cite this headnote

[2]    Courts ⚖  Constitutional questions, civil
       rights, and discrimination in general

       Rooker-Feldman doctrine, precluding federal
       court review of state court final judgment,

barred suit under Individuals with Disabilities
Education Act (IDEA) by noncustodial
parent challenging school district's denial of
mainstream educational placement for disabled
student; claimant was trying to obtain federal
court reversal of state court determination that
he could not represent student's interests under
IDEA, because he was not custodial parent. 20
U.S.C.A. § 1400 et seq.

OPINION & ORDER

CASEY, J.

I. Background

**\*1** *Pro se* Plaintiff Richard Fauconier ("Plaintiff") initiated
this action on behalf of himself and his son, M.F., [1] against
the Committee on Special Education of District 3 of the
New York City Board of Education ("Defendant") alleging
violations of the Individuals with Disabilities Education
Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* On July 24,
2002, Defendant filed a motion to dismiss the complaint.
By Report and Recommendation ("Report") Judge Ronald
Ellis recommended that Defendant's motion to dismiss be
granted and that Plaintiff's complaint be dismissed without
prejudice. Thereafter, the Plaintiff filed timely objections to
the Report. Accordingly, the Court reviews the matter *de
novo.* Fed.R.Civ.P. 72(b).

1      In the interests of privacy, the child will be referred
       to in these proceedings as "M.F."

The Plaintiff is the non-custodial parent of M.F., who has been
diagnosed with Attention Deficit Hyperactive Disorder. M.F.
is a student at a private institution for emotionally, physically
and mentally challenged students. Due to his disability, public
funds are used to pay for M.F.'s education.

On five separate occasions, from August, 1994 to March,
2001, M.F. was evaluated by District 3. As a result of each
evaluation, District 3 found it to be in M.F.'s best interest
that he continue to attend a private educational institution.
The Plaintiff, however, sought to have his son placed in
a mainstream school. District 3 denied Plaintiff's request
for a reevaluation and transfer of M.F. and declined to

2003 WL 21345549

include Plaintiff as a member of M.F.'s IEP team. In reaching these decisions, District 3 cited Plaintiff's status as the non-custodial parent.

As a result, on November 5, 2001, Plaintiff filed an order to show cause in an Article 78 Special Proceeding in the State of New York Supreme Court, New York County. Plaintiff sought: (1) a reevaluation of M.F.; (2) placement of M.F. in a mainstream academic setting with support services; (3) permission for M.F. to take the standardized testing for fourth grade math and English; and (4) a position on M.F.'s IEP team with full access to his educational records. By final disposition, the state court denied Plaintiff's claims in light of his non-custodial status. Plaintiff then commenced this federal action on February 11, 2002.

## II. Discussion

 **[1]**    In his Report, Judge Ellis recommended that Plaintiff's complaint be dismissed without prejudice on the ground that under *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), Plaintiff could not proceed *pro se* to litigate M .F.'s interests. For the following reasons, the Court concludes that pursuant to its affirmative duty to enforce the *Cheung* rule, the claims that Plaintiff brings on behalf of his son must be dismissed. Additionally, the Court finds that Plaintiff's remaining claims brought on his own behalf are barred by the *Rooker–Feldman* doctrine.

## A. Representing Children Pro Se

The Second Circuit has made clear in *Cheung* that a court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child. *See id.* at 61. In fact, the Second Circuit in *Cheung* enforced this affirmative duty prior to addressing the jurisdictional issues present in that case. This Court therefore has a duty to enforce the *Cheung* rule, for " '[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." ' *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 125 (2d Cir.1998) (quoting *Johns v. County of San Diego,* 114 F.3d 874, 877 (9th Cir.1997). On the other hand, a parent is entitled to represent himself when claiming that his own rights under the IDEA have been violated. *Id.* at 126. Here, Counts One and Two of Plaintiff's Amended Complaint are claims that exclusively concern M.F.'s rights. Additionally, Counts Three and Five concern both Plaintiff's and M.F.'s rights. Under *Cheung,* however, Plaintiff may not litigate the interests of

M.F. Therefore, at the outset the Court dismisses Counts One and Two of Plaintiff's complaint. Counts Three and Five are dismissed to the extent that they concern M.F.'s rights. Thus, the remaining claims not barred by *Cheung* are Plaintiff's record-access claim, Plaintiff's claim that he be permitted a seat on M.F.'s IEP team, and his claim that Defendant has violated his Fourteenth Amendment rights.

## B. Rooker–Feldman

 **\*2**  **[2]**    The *Rooker–Feldman* doctrine holds that a party may not take an appeal of a state court decision to a federal court. Plaintiff, however, requests that this Court do precisely that.

Plaintiff's claims that he be permitted access to M.F.'s educational records and that he be given a seat on M.F.'s IEP team were precisely the subject of Plaintiff's order to show cause brought in state court. Therefore, as discussed below, under the *Rooker–Feldman* doctrine these claims may not be re-litigated here. Accordingly, the Court finds that it lacks subject matter jurisdiction over these claims.

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and therefore may be raised at any time by either party or *sua sponte* by the Court. *Moccio v. New York State Officers of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Generally speaking, the *Rooker–Feldman* doctrine directs that a federal district court lacks authority to review the final judgment of state courts in judicial proceedings. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). The doctrine is derived from two Supreme Court decisions. In the first, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Court held that appeals from state court judgments are reserved to the Supreme Court, and therefore the lower federal courts lack jurisdiction to entertain such appeals. Sixty years later, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court extended *Rooker* by barring reconsideration of claims that were implicitly decided by the state court as well. In crafting the "inextricably intertwined" test, the Court held:

> If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding ... then the district court

is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman,* 460 U.S. at 483–84 n. 16.

Under the *Rooker–Feldman* doctrine, the Court may address two questions: (1) whether a party is attempting to directly challenge a state court decision in federal court and (2) whether such a suit is inextricably intertwined with the previous state court proceedings. Given that a challenge under the *Rooker–Feldman* doctrine as an inquiry into the Court's subject matter jurisdiction, the Court may consider materials extrinsic to the complaint. *Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002). The Court now turns to this inquiry.

In his attempt to appeal the decision of the state court to the federal courts, Plaintiff asserts that this action contains claims under the IDEA that were never raised in the state court proceeding. *See* Plaintiff's Memorandum of Law ¶ 38. The Court, however, finds Plaintiff's assertion disingenuous. In his November 15, 2001 Affidavit filed in New York Supreme Court, Plaintiff himself stated that his cause of action was partly "governed by the federal Individuals with Disabilities Education Act (IDEA)." Moreover, in state court Plaintiff asserted that despite the fact that he is M.F.'s non-custodial father, *Doe v. Anrig,* 651 F.Supp. 424 (D.Mass.1987), supported his claim that he could still assert claims under the IDEA. *See* Plaintiff's Nov. 15, 2001 Aff. ¶ 7(i). Nevertheless, the state court concluded that because Plaintiff is not the custodial parent, he lacked decision making authority for M.F. *See* Ex. O to Am. Compl.

 **\*3** On December 6, 2001 Plaintiff filed this action contending that the state court was insensitive to the facts forming the basis of his federal claims and that the state

court failed to protect his federal rights. Plaintiff's Amended Complaint asserts that the state court "made no mention of *Doe v. Anrig*" and that "apparently, no judicial notice is taken of cases in federal district courts such as *Doe v. Anrig,* and the educational system's escape of scrutiny is assured." Am. Compl. ¶¶ 33, 34. Accordingly, the Court finds that Plaintiff's pleadings demonstrate that he has brought this action because he is dissatisfied with the state court decision. In effect, Plaintiff is asking the Court to review the state court's determination that he lacks educational decision making authority because he is not the custodial parent. The *Rooker–Feldman* doctrine squarely bars a litigant from complaining of a result in state court by asking a federal court to entertain an appeal of that result. *See Kropelnicki,* 290 F.3d at 128. To consider Plaintiff's claims, the Court would be required to determine whether the IDEA protects the rights of both custodial and non-custodial parents, a question the state court has already ruled upon in this case. This type of request is squarely barred under the *Rooker–Feldman* doctrine. *See Corsini v. Ross,* 152 F.3d 917 (2d Cir.1998) ("[D]istrict courts 'do not have jurisdiction ... over challenges to state court decisions ... even if those challenges allege that the state court's action was unconstitutional .' ") (quoting *Feldman,* 460 U.S. at 486). Accordingly, the Court lacks subject matter jurisdiction in this case.

III. Conclusion

For the reasons stated above, under *Cheung* Plaintiff's claims brought on behalf of M.F. are dismissed. Additionally, Plaintiff's remaining claims pertaining to his rights under the IDEA are dismissed under the *Rooker–Feldman* doctrine. The Clerk of the Court is hereby directed to close the case.

All Citations

Not Reported in F.Supp.2d, 2003 WL 21345549

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

2016 WL 5372792
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Marie SEVILLA, Plaintiff
v.
A.C.S. Kristina PEREZ csw, and
Marlena Arrizo Supvr, Defendants.

15-CV-3528(KAM)(LB)
|
Signed 09/26/2016

**Attorneys and Law Firms**

Marie Sevilla, Staten Island, NY, pro se.

Elizabeth Carolyn DeGori, NYC Law Department, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

KIYO A. MATSUMOTO, United States District Judge

**\*1** Plaintiff Marie Sevilla ("plaintiff" or "Ms. Sevilla") brings this action pursuant to 42 U.S.C. § 1983 seeking damages against defendants New York City Administration for Children's Services ("ACS") employees Kristina Perez and Marleny Ariza [1] ("defendants") for alleged violations of her rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments. The alleged violations stem from investigations conducted and proceedings commenced by ACS concerning allegations that plaintiff neglected her children, the removal of three of plaintiff's children from her custody on October 7, 2011, and the Family Court Proceedings that followed.

[1]    Ms. Ariza was incorrectly sued as Marlena Arrizo.

Presently before the court are defendants' Motion to Dismiss the Amended Complaint (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* ECF No. 26. For the reasons stated herein the Motion is granted.

**Background**

Plaintiff alleges that ACS employees Kristina Perez ("Ms. Perez") and her supervisor Marleny Ariza ("Ms. Ariza") "effectuated an unlawful removal of [her] children from their office on October 7, 2011 ...." Amended Complaint ("Am. Compl."), ECF No. 4 at 2. [2] Plaintiff also alleges that defendants made unspecified false statements in the petition pursuant to Article 10 of the Family Court Act (the "Article 10 Petition") that was submitted to the Family Court on October 7, 2011. Ms. Perez also allegedly gave false testimony and caused the Family Court Proceedings to be delayed by six months because she failed to appear for certain court dates. *Id.* at 2. Ms. Sevilla further alleges that defendants threatened, harassed, coerced and discriminated against her because they believed that she was mentally ill. Am. Compl., ECF No. 4 at 2, 4. Plaintiff seeks three million dollars in damages for the violation of her constitutional rights. *Id.* at 4-5.

[2]    Citations to page numbers refer to the page numbers assigned by the Official Court Electronic Filing System, ECF.

Several court proceedings (collectively, the "Family Court Proceedings") were held on, and after, the October 7, 2011 removal of plaintiff's children from Ms. Sevilla's custody (the "Removal"). Exhibits ("Exs.") A-C to Declaration of Elizabeth C. DeGori ("DeGori Decl."), Hearing Transcripts, ECF Nos. 28-1 to 28-3. Ms. Sevilla appeared *pro se* during the Family Court Proceedings after allocuting before the judge and waiving counsel at a hearing on May 9, 2012 during which the judge encouraged plaintiff to allow her court appointed counsel to act as her legal advisor and she agreed. *See* Ex. A to DeGori Decl., Transcript of May 9, 2012 Family Court Hearing ("May 9, 2012 Transcript"), ECF No. 28-1 at 5-7; Ex. D to DeGori Decl., Order of Fact Finding dated 1/14/2013, ECF No. 28-4 at 2. The Family Court, in its January 14, 2013, Order of Fact Finding, found by a preponderance of the credible evidence that, despite Ms. Sevilla's testimony to the contrary, Ms. Sevilla punched child M [3] and failed to provide adequate supervision as to children A [4] and J. The Family Court also found that sufficient facts were presented to sustain the Article 10 Petition and determined that children M, A and J were neglected and children An and S were derivatively neglected. *Id.*

[3]    In order to protect the children's privacy, the parties have identified the children by their first initial.

[4]    Child "A," who was five years old at the time of Removal, is referred to as "AL" in the January 14,

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 28 of 51

2013 Family Court transcript and as "A" in the Family Court decision dated January 14, 2013. *See* Ex. C to DeGori Decl., Transcript of January 14, 2013 Family Court Hearing, ECF No. 28-3; Ex. D to DeGori Decl., Order of Fact Finding dated 1/14/2013, ECF No. 28-4. The Appellate Division Decision dated June 18, 2014, refers to the five year old child as "AL." *See* Ex. E to DeGori Decl., Appellate Division Decision, ECF No. 28-5 at 2. For the sake of consistency with the Family Court, this court refers to the child as "A" throughout this decision.

**\*2** Ms. Sevilla appealed the Family Court's ruling to the Supreme Court of New York, Appellate Division (the "Appellate Division"), and on June 18, 2014, the Appellate Division affirmed the Family Court's decision. *See* Ex. E to DeGori Decl., Appellate Division Decision, ECF No. 28-5. The Appellate Division found that the Family Court properly considered the out-of-court statements of siblings A and J to the caseworker, the caseworker's own observations, the two children's cross-corroborating statements, confirmation of certain events by two of the older children and certain statements by Ms. Sevilla. *Id.* at 3. The Appellate Division gave "great deference" to the Family Court's credibility determinations as they related to Ms. Sevilla and held that the Family Court's neglect and derivative neglect findings were supported by the record. *Id.* at 3-4. Ms. Sevilla sought further appeal of the Appellate Court's Decision, but the Court of Appeals denied her request for leave to appeal on September 18, 2014. *See* Ex. F to DeGori Decl., Court of Appeals Decision, ECF No. 28-6.

On June 14, 2015, plaintiff, filed this action *pro se* pursuant to 42 U.S.C. § 1983 against various defendants alleging violations of her rights under the First, Fourth, Sixth, Ninth and Fourteenth Amendments ("Complaint"). *See* Complaint, ECF No. 1 at 2. On June 17, 2015, plaintiff filed the Amended Complaint. *See* ECF No. 4. On July 7, 2015, the court, *sua sponte*, dismissed plaintiff's claims against defendants Judge Arnold Lim, Gladys Carrion, Ronald Richter, Michael Cardozo, Bob Sloan, Deidre Sommer, and Rosin Steinhagen Mendel. *See* Memorandum and Order, ECF No. 7. On December 18, 2015, the parties submitted their fully briefed motion papers. *See* ECF Nos. 24-33. [5]

[5]    Plaintiff also filed a sur-reply on December 28, 2015. *See* ECF No. 34. Ms. Sevilla did not seek leave to file the sur-reply and the court

did not grant permission for the filing of a sur-reply; this contravenes the general principle that supplementary filings require leave of the court. *See Endo Pharm. Inc. v. Amneal Pharm., LLC,* No. 12 CIV. 8060 (TPG), 2016 WL 1732751, at \*9 (S.D.N.Y. Apr. 29, 2016) (striking sur-reply because party did not seek or receive permission from the court to file a sur-reply). Although, the court need not consider Ms. Sevilla's sur-reply in deciding this Motion, the court has considered plaintiff's sur-reply but finds it does not add to her overall position.

### Discussion

**I. Standards of Review**

"When a plaintiff is *pro se*, the Court must 'construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s].' " *Best v. City of New York,* No. 12 CIV. 7874 RJS SN, 2014 WL 163899, at \*6 (S.D.N.Y. Jan. 15, 2014) (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)); *see Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). Even with a *pro se* plaintiff, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis,* 618 F.3d at 170 (citation and internal quotation marks omitted). Therefore, although the court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

**a. Fed. R. Civ. P. 12(b)(1)**

A court cannot adjudicate the merits of a case if it lacks jurisdiction; therefore, it must decide 12(b)(1) motions before any other dispositive motions. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998); *Winn v. Schafer,* 499 F.Supp.2d 390, 394 (S.D.N.Y. 2007) (citing cases); *Tratt v. Retrieval Masters Creditors Bureau, Inc.,* 00 Civ. 4560, 2001 WL 667602, at \*2 (E.D.N.Y. May 23, 2001) (discussion of subject matter jurisdiction and motion for judgment of the pleadings). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

"In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States."

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 29 of 51

*IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993) (quoting *Goldman v. Gallant Securities, Inc.*, 878 F.2d 71, 73 (2d Cir. 1989)). When deciding a jurisdictional motion, the court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). In addition to the pleadings, a court may consider " 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Villanueva v. City of New York*, No. 08 CIV. 8793 (LBS), 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) (citing *Brass*, 987 F.2d 142, 150 (2d Cir. 1993)). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**b. Fed. R. Civ. P. 12(b)(6)**

**\*3** When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive dismissal, the plaintiff must plead "factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation omitted). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In reviewing a complaint, a court is not limited to the four corners of the complaint; a court may also consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Villanueva*, 2010 WL 1654162, at *5 (citing *Brass, Inc.*, 987 F.2d at 150); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). The court may review such documents even when the complaint does not explicitly

refer to them. *Cortec. Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). "As such, we consider the court orders and hearing transcripts from the underlying Family Court proceedings in deciding this motion." *Villanueva*, 2010 WL 1654162, at *5.

## II. Analysis

The court addresses in turn defendants' arguments in support of the Motion. For the reasons set forth below, the court grants defendants' motion to dismiss the Amended Complaint.

### 1) Statute of Limitations

"The statute of limitations for claims brought under Section 1983 is governed by state law," and the relevant limitations period in New York is three years, pursuant to New York's Civil Practice Law and Rules § 214. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Although state law governs the applicable limitations period, federal law governs when a federal claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999). Generally, under federal law, a claim accrues and the statute of limitations begins to run, "when the plaintiff knows or has reason to know of the injury" that provides the grounds for the action. *Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002). In other words, "a claim accrues when 'the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.' " *Allen v. Mattingly*, No. 10-CV-0667-SJF-ARL, 2011 WL 1261103, at *10 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 Fed.Appx. 712 (2d Cir. 2012) (quoting *Wallace*, 549 U.S. at 388, 127 S.Ct. at 1095).

Ms. Sevilla filed her complaint on June 14, 2015, see ECF No. 1, so any claims that accrued before June 14, 2012 are time barred. *See Shomo*, 579 F.3d at 181 (The statute of limitations for § 1983 claims brought in New York is three years.). Several of Ms. Sevilla's claims arise from the events occurring on October 7, 2011: the submission of the Article 10 Petition to the Family Court and the removal of the children from her custody. *See* Am. Compl., ECF No. 4 at 2 and Ex. D. to DeGori Decl., Order of Fact Finding dated 1/14/2013, ECF No. 28-4 at 2. The crucial inquiry, therefore, is whether the claims arising from these events accrued on October 7, 2011 or at some later date. Ms. Sevilla experienced her alleged

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 30 of 51

injury, the removal of her children, on October 7, 2011. Courts have held, in similar situations, that the limitations period begins to run on the date the children were removed. *See, e.g.*, *Williams v. Savory*, 87 F.Supp.3d 437, 453-54 (S.D.N.Y. 2015) (finding that the statute of limitations began to run on the date the children were removed from the parent's custody); *Winkler v. Grant*, No. 07 Civ. 6280T (MAT), 2008 WL 1721758, at *3 (W.D.N.Y. Apr. 8, 2008) ("The three-year period begins on the date on which the plaintiff knew or had reason to know of the injury allegedly suffered. In the instant case, plaintiff's cause of action for the unlawful removal of his children accrued on December 3, 2003, the date on which his children were taken. Because the removal of his children took place more than three years before plaintiff filed his Complaint, plaintiff's cause of action based on that claim is time barred.") (citation omitted), *aff'd in part, vacated in part on other grounds*, 370 Fed.Appx. 145 (2d Cir. 2010) (summary order). Accordingly, the court finds that claims arising from the removal of her children, and the allegedly false statements in the Article 10 Petition are time barred because the events occurred on October 7, 2011, more than three years before Ms. Sevilla filed the Complaint.

**\*4** Ms. Sevilla appears to argue that the filing of a notice of claim "on or about December 2013" constitutes the commencement of an action for statute of limitations purposes, rendering her claims timely. Opposition to Defendants' Motion to Dismiss ("Opp. Br."), ECF No. 30 at 2. She is mistaken, however. "New York's notice of claim requirements are not applicable to section 1983 claims brought in federal court." *Souhaite v. Cnty. of Nassau*, No. 12-CV-2698 SJF AKT, 2013 WL 4495186, at *5 (E.D.N.Y. Aug. 19, 2013) (citation omitted); *see also Dingle v. City of New York*, 728 F.Supp.2d 332, 348 (S.D.N.Y. 2010) (same) (citing *Day v. Moscow*, 955 F.2d 807, 814 (2d Cir. 1992)). The filing of the notice of claim did not toll the applicable § 1983 statute of limitations. *Souhaite*, 2013 WL 4495186, at *5 (holding that the claims were time barred because the three-year 1983 statute of limitations had expired and the filing of a notice of claim within the limitations period did not constitute proper commencement of the action).[6]

[6]  Ms. Sevilla does not explicitly rely on the continuing violation doctrine but the court, in liberally construing the Amended Complaint, will consider the possibility that plaintiff has attempted to alleged such a theory. "The continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from a series

of separate acts that collectively constitute one unlawful [act], but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act.' " *Williams v. Savory*, 87 F.Supp.3d 437, 454 (S.D.N.Y. 2015) (citing *Shomo*, 579 F.3d at 181) (quotation marks omitted). Ms. Sevilla's claims do not support an application of the continuing violation doctrine because the Removal and the Article 10 Petition did not "flow from a series of continuing wrongs." *Savory*, 87 F.Supp.3d at 454. Ms. Sevilla knew, or should have known, of her injury on October 7, 2011 when the children were removed from her custody. Accordingly, as set forth above, any claims that accrued prior to June 14, 2012 are time-barred. *See Savory*, 87 F.Supp.3d at 454 (finding that continuing violation doctrine did not apply because the Removal of the children did not flow from a series of continuing wrongs, and therefore, the claims were time-barred because the events giving rise to the claims occurred more than three years before the complaint was filed).

### 2) Issue Preclusion

Ms. Sevilla's claims appear to challenge the Family Court's findings on the merits. Am. Compl., ECF No. 4 at 2-4. She alleges, among other things, that Ms. Perez made false statements when she testified[7] during the Family Court Proceedings. *See* Am. Compl., ECF No. 4 at 2. Defendants, invoking the doctrine of issue preclusion, argue that Ms. Sevilla is barred from litigating any claims relating to Ms. Perez's testimony during the Family Court Proceedings. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Br."), ECF No. 29 at 14-16. The court finds that issues relating to Ms. Perez's testimony were "actually" and "necessarily" litigated in the Family Court Proceedings, and that Ms. Sevilla had a full and fair opportunity to litigate these issues in the Family Court Proceedings. Consequently, any claims arising from Ms. Perez's testimony are precluded.

[7]  Ms. Sevilla also alleges that Ms. Perez submitted false statements "in the original motions sent to the Family Court." Am. Compl. at 2. The Article 10 Petition was filed in Family Court on October 7, 2011. *See* Ex. D to DeGori Decl., Order of Fact Finding, ECF No. 28-4 at 1. As discussed above, claims that accrued prior to June 14, 2012,

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

including those arising from statements in the Article 10 Petition, are time-barred.

**\*5** "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Further, federal courts must give preclusive effect to state court judgments. *See* 28 U.S.C. § 1738; *Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir. 1986). "Under New York law, collateral estoppel or issue preclusion bars claims where '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.' " *Velez v. Reynolds*, 325 F.Supp.2d 293, 305 (S.D.N.Y. 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)); *see also Phifer v. City of New York*, 289 F.3d 49, 56 (2d Cir. 2002). An issue is "actually" and "necessarily" decided for collateral estoppel purposes " 'if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first.' " *Carvalho v. Stevens*, No. 12 CIV. 128 LTS FM, 2013 WL 3742532, at \*4 (S.D.N.Y. July 17, 2013) (quoting *In re American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989)). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while now party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon*, 58 F.3 at 869.

Here, the Family Court found by a preponderance of the credible evidence that Ms. Sevilla punched child M and failed to provide adequate supervision as to children A and J. These factual findings were "necessary" to the Family Court's neglect determination. *See* Ex. D to DeGori Decl., Order of Fact Finding dated 1/14/2013, ECF No. 28-4 at 3. On appeal, the Appellate Division affirmed the Family Court's determination. *See* Ex. E to DeGori Decl., Appellate Division's Decision, ECF No. 28-5 at 4. The Appellate Division noted the following facts found by the Family Court: the caseworker, Ms. Perez, saw wounds and scars on one of the younger children, J, then age 8. J told Ms. Perez that the wounds and scars were caused by his older siblings and that his mother punched him. *Id.* at 3. A, then age five, corroborated J's account of violence in the home. *Id.* A told Ms. Perez that the older siblings often fought with each other and with Ms. Sevilla, and that she and J were often left at home alone or with the older children who hit, slapped or choked them. *Id.* Further, the Appellate

Division accorded "great deference" to the Family Court's credibility determinations, including those relating to Ms. Sevilla's denial of the neglect allegations. *Id.*

The Appellate Division affirmed the Family Court's determinations, including the Family Court's credibility finding related to Ms. Perez's testimony, that three of the children were neglected and two of the children were derivatively neglected. *See id.* at 3-4. The Appellate Division found that the out-of-court statements of two of the children to Ms. Perez were corroborated by Ms. Perez's own observations, the two children's cross-corroborating statements, confirmation of certain events by two of the older children and certain statements made by Ms. Sevilla. *Id.* at 3. Thus, issues raised by plaintiff's claims in the instant action were properly, "actually and necessarily," considered by the Family Court.

As for the second prong of the inquiry, the court finds that Ms. Sevilla had a full and fair opportunity to litigate any issues relating to Ms. Perez's testimony during the Family Court Proceedings. Whether a party had a "full and fair opportunity" to litigate the issues depends on "the realities of the prior litigation including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Carvalho*, 2013 WL 3742532, at \*4 (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 (N.Y. 1984)) (internal quotations omitted). "Specifically, courts look to the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Id.*

**\*6** Ms. Sevilla had a full and fair opportunity to present her case, including the opportunity to be represented or have the assistance of a legal advisor, discredit Ms. Perez's testimony, and present rebuttal evidence as shown by Ms. Sevilla's own testimony during the Family Court Proceedings. Ms. Sevilla has not alleged facts to the contrary. Although Ms. Sevilla chose to proceed *pro se* during the Family Court Proceedings, the Family Court permitted her to do so, with her agreement that her assigned counsel would remain as her legal advisor. That a party proceeds as a *pro se* litigant does not establish that the party did not receive a full and fair opportunity to present their case. *See e.g. Buford v. Coombe*, 199 F.3d 1321

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 32 of 51
Sevilla v. Perez, Not Reported in Fed. Supp. (2016)
2016 WL 5372792

(2d Cir. 1999) (finding that the party's *pro se* status was insufficient to establish that the "party did not have a 'full and fair opportunity' [to litigate the issues in question] for purposes of collateral estoppel"). Here, although Ms. Sevilla chose to proceed *pro se*, she was not without legal advice. *Cf. Buford*, 199 F.3d at 1321. Further, because Ms. Perez's testimony was important to the Family Court's determination, Ms. Sevilla was fully incentivized, and had the opportunity, to rebut or discredit Ms. Perez's testimony. Accordingly, the court finds that Ms. Sevilla has not carried her "burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon*, 58 F.3 at 869.

Ms. Sevilla, therefore, is precluded from re-litigating the Family Court's determinations, including the credibility and weight of Ms. Perez's testimony because factual and legal issues regarding the neglect were "actually" and "necessarily" litigated in the Family Court. Plaintiff is also precluded from pursuing any legal claims that if successful, would require contrary factual findings than those of the Family Court, specifically, plaintiff's Fourth Amendment,[8] equal protection and substantive due process claims. *See Velez v. Reynolds*, 325 F.Supp.2d 293, 307 (S.D.N.Y. 2004) ("An attack on [caseworker's] testimony would thus attack the merits of the family court's decision" because the family court found the caseworker's testimony was credible and adopted it as the basis for finding neglect by the plaintiff.); *Storck v. Suffolk County Dep't of Social Servs.*, 62 F.Supp.2d 927, 938 (E.D.N.Y. 1999) (barring claims that the doctors' testimonies were false because those claims would, if proven, "lead to the inescapable conclusion that the family court ruling was 'wrong' "); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("[A] federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."). Thus, Ms. Sevilla fails to state plausible § 1983 claims arising from Ms. Perez's testimony during the Family Court Proceedings and they are precluded. *Carvalho*, 2013 WL 3742532, at *4 (finding that plaintiff was collaterally estopped from re-litigating the Family Court's credibility determination as to the caseworker and thus plaintiff could not plead facts that plausibly stated equal protection or substantive due process claims).

[8]     The court construes the Amended Complaint to allege a Fourth Amendment violation based on defendants' removal of the children from plaintiff's custody. The factual underpinnings of a successful

Fourth Amendment claim would require a finding that the Removal, and thus the "seizure" of the children, was improper. Such a ruling would require re-litigation of issues, and risk findings contrary to those already decided in the state court proceedings. See 28 U.S.C. § 1738; *Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir. 1986) (Federal courts must give preclusive effect to state court judgments.). Moreover, the Fourth Amendment claim would have accrued more than three years prior to the filing of the Complaint on October 7, 2011 when the children were removed, and thus, would be time barred. *See Shomo*, 579 F.3d at 181.

### 3) Sufficiency of Plaintiff's § 1983 Claims

The court next evaluates whether plaintiff's allegations that are not time barred or collaterally estopped state a § 1983 claim. The court finds that Ms. Sevilla has not alleged sufficient facts to state plausible equal protection or substantive due process claims.[9]

[9]     The court does not construe the Amended Complaint as alleging a procedural due process claim because the Amended Complaint is devoid of any allegations challenging the procedures that were available to Ms. Sevilla during the Family Court Proceedings. Nothing in the Amended Complaint suggests that the procedures used in the Family Court Proceedings were constitutionally deficient.

**\*7** Parents " 'have a constitutionally protected liberty interest in the care, custody and management of their children,' and family members have a fundamental right under the Fourteenth Amendment to remain together." *Shapiro v. Kronfeld*, No. 00 Civ. 6286(RWS), 2004 WL 2698889, at *12 (S.D.N.Y. Nov. 24, 2004) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999)). Although the State has a strong interest in protecting the welfare of children, due process protections, as well as other protections, must be afforded when the state interferes with family integrity. *Id.* "To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 33 of 51

2016 WL 5372792

### i. Substantive Due Process

Plaintiff alleges that her substantive due process rights were violated because the Removal was "unlawful," the Article 10 Petition contained false statements and because Ms. Perez failed to appear at two scheduled court appearances. Am. Compl., ECF No. 4 at 2. To establish a violation of one's substantive due process rights "the interference with the plaintiff's protected right must be 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.' " *Southerland v. City of New York*, 680 F.3d 127, 151–52 (2d Cir. 2012) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 142–43 (2d Cir. 2003)). "Only if a plaintiff can show that the government's request for removal or an order of protection was summarily approved by the Family Court on the basis of false or greatly flawed ACS representations, or that the judicial proceeding was otherwise substantially tainted, will a court-ordered separation be found to infringe on a parent's substantive due process rights." *Ogunbayo*, 2012 WL 6621290, at *11 (citing *Graham v. City of New York*, No. 11 CV 5747, 2012 WL 2154257, at * 12 (E.D.N.Y. June 14, 2012)).

Ms. Sevilla is barred from challenging the Removal and the Article 10 Petition because the statute of limitations is expired. She is also precluded from re-litigating issues concerning the Family Court's determinations, including those relating to Ms. Perez's testimony, because a substantive due process challenge to an ACS removal turns on whether there was a "reasonable basis" for ACS's actions. Thus, the plaintiff's "claim could only succeed to the extent that the state court wrongly decided the issue" of whether the removal was justified. *See Phifer*, 289 F.3d at 60. As discussed, federal courts must give preclusive effect to state court judgments. *See* 28 U.S.C. § 1738; *Cameron*, 806 F.2d at 384. Therefore, adjudicating a substantive due process claim based on the Article 10 Petition, the Removal, or Ms. Perez's testimony would require a finding that the Family Court's determination was incorrect and would run afoul of this rule. *Id.*

The remaining allegations are insufficient to state a plausible substantive due process claim. Even if plaintiff's allegations were not time barred and collaterally estopped, the Amended Complaint does not allege facts suggesting that defendants' actions were so "shocking, arbitrary, and egregious" to offend Due Process. Ms. Sevilla makes conclusory allegations that ACS was "manipulative, biased [and] vindictive" and that ACS "used tactics to intimidate, threaten [and] coerce" her. *See* Am. Compl., ECF No. 4 at 3. Ms. Sevilla failed to plead specific facts showing how ACS was "manipulative, biased [and] vindictive;" nor did she provide specific facts as to the tactics ACS used to "intimidate, threaten and coerce" her.

**\*8** Ms. Sevilla further claims that her substantive due process rights were violated when Ms. Perez, by missing two court appearances, delayed the Family Court Proceedings by six months. As an initial matter, the court finds that although Ms. Sevilla mistakenly alleges that Ms. Perez did not appear at two hearings in 2013, if Ms. Perez did miss any court dates, the missed court dates occurred in 2012 not in 2013, as established by the partial transcripts submitted with defendants' motion. *See* Ex. A to DeGori Decl., May 9, 2012 Transcript, ECF No. 28-1 at 2, 8. At the May 9, 2012 Hearing, the Family Court addressed Ms. Sevilla's legal representation and adjourned the fact finding proceedings to May 31, 2012 and June 28, 2012. *Id.* at 5-7. Ms. Perez appeared at a September 21, 2012 Family Court hearing. *See* Ex. B to DeGori Decl., Transcript of September 21, 2012 Family Court Hearing, ECF No. 28-2 at 4. The Family Court then made findings of fact at a hearing held on January 14, 2013. *See* Ex. C to DeGori Decl., Transcript of January 14, 2013 Family Court Hearing, ECF No. 28-3; *see also* Ex. D to DeGori Decl., Order of Fact Finding dated 1/14/2013, ECF No. 28-4. Therefore, any court dates that Ms. Perez allegedly missed must have occurred prior to the January 14, 2013 Family Court Hearing. [10]

10    Although at the motion to dismiss stage the court must accept plaintiff's allegations as true, the court is also permitted to consider documents referred to and incorporated in the complaint and matters of which judicial notice may be taken including "court orders and hearing transcripts from the underlying Family Court proceedings." *See Villanueva*, 2010 WL 1654162, at *5. Further, the Second Circuit has held that a defendant may introduce a document integral to the complaint when attacking the complaint at the motion to dismiss stage, and thus, a court may consider such documents. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

> plaintiff should not so easily be allowed to escape
> the consequences of its own failure.") (citations
> omitted). Here, the proffered records from the
> Family Court Proceedings are integral to the
> allegations in the Amended Complaint and the
> court may properly consider them.

Even accepting as true that the scheduled hearings were adjourned because Ms. Perez did not appear, these allegations are not sufficient to plausibly state a substantive due process violation. As shown by the transcript and as alleged by Ms. Sevilla, the hearings that Ms. Perez allegedly missed were scheduled about a month apart, in May and in June 2012; any alleged delay would have only been a month long. Missing two court hearings and allegedly causing a one month delay is not "shocking, arbitrary, and egregious" and does not amount to "substantial irregularities" in the Family Court Proceedings. *Graham v. City of New York*, 869 F. Supp. 2d 337, 350, 354 (E.D.N.Y. 2012). Further, "[i]n the absence of any allegations of substantial irregularities in the Family Court proceeding, the intervening, independent judicial determination—[the Appellate Division's affirmance of the Family Court's ruling]—absolves the defendants of liability." *Id.* at 354. Accordingly, Ms. Sevilla has not stated a plausible substantive due process claim and it is dismissed.

### ii. Equal Protection

To the extent that the Amended Complaint can be construed as alleging an equal protection claim, it also must be dismissed. To state a selective prosecution equal protection claim, plaintiffs "have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 Fed.Appx. 714, 718 (2d Cir. 2013) (quoting *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (internal quotation marks omitted)).

**\*9** Ms. Sevilla appears to allege that she was treated differently from other similarly situated parents because the defendants believed she was mentally ill. *See* Am. Compl., ECF No. 4 at 4. She has pled no facts showing that she experienced differential treatment. The record is clear, however, that the Family Court's neglect finding, and thus the Removal, were based on Ms. Perez's credible testimony

regarding her observations and on statements made by the children and Ms. Sevilla. The record shows that ACS had a rational basis for the Removal. [11] Therefore, she has not stated a plausible equal protection claim.

[11] "Under class-of-one discrimination doctrine, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Touro Law Ctr.*, 519 Fed.Appx. at 718 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (internal quotation marks omitted)). As discussed above, Ms. Sevilla has pled no facts showing differential treatment, and the record establishes that ACS had a rational basis for the Removal. Consequently, Ms. Sevilla also fails to state a claim under the class-of-one equal protection theory.

Furthermore, as discussed above, Ms. Sevilla is precluded from re-litigating the Family Court's determinations, and her claims arising from the Article 10 Petition and the Removal are time-barred. Accordingly, Ms. Sevilla fails to allege sufficient facts to state a plausible claim that Ms. Perez and Ms. Ariza, on behalf of ACS, lacked a reasonable basis for the Removal. *See Carvalho*, 2013 WL 3742532, at \*4 (finding that because party was precluded from re-litigating the Family Court's credibility and neglect findings, party could not "allege facts sufficient to plausibly claim that [the caseworker] lacked a reasonable basis to seek removal" of the child); *see also Graham*, 2012 WL 2154257, at \* 12 ("[I]n the case of a child protective investigation, the existence of a reasonable basis for the filing of a Family Court petition is sufficient to demonstrate that the government action would have been taken even in the absence of some retaliatory motive.").

### 4) First, Sixth and Ninth Amendment Claims

Plaintiff also alleges violations of her rights under the First, Sixth and Ninth Amendments. *See* Am. Compl., ECF No. 4 at 2. The Amended Complaint is silent as to any facts regarding alleged violations of Ms. Sevilla's First Amendment rights. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

Sevilla v. Perez, Not Reported in Fed. Supp. (2016)

2016 WL 5372792

Case 6:24-cv-01091-GTS-MJK    Document 9    Filed 09/16/24    Page 35 of 51

state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, plaintiff's First Amendment Claim is dismissed.

Ms. Sevilla also claims that the alleged delay caused by Ms. Perez's failure to appear violated her Sixth Amendment right to a speedy trial. *See* Am. Compl., ECF No. 4 at 4. The Sixth Amendment applies only to criminal proceedings. *See Dogget v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 2690 (1992). Proceedings brought pursuant to Article 10 of the Family Court Act are civil proceedings. *See Sundbye v. Ogunleye*, 3 F.Supp.2d 254, 260 n. 9 (E.D.N.Y. 1998) ("Under New York State law, 'a child abuse or neglect proceeding under article 10 of the Family Court Act is a civil proceeding for the protection of the child alleged to be abused or neglected.' ") (quoting *People v. Smith*, 62 N.Y.2d 306, 476 N.Y.S.2d 797, 798, 465 N.E.2d 336 (1984)). Thus, Ms. Sevilla did not have a Sixth Amendment right to a speedy trial in the Article 10 Proceedings. Consequently, the Sixth Amendment claim is dismissed.

**\*10** As for Ms. Sevilla's Ninth Amendment claim, it is uncontroverted that the Ninth Amendment does not independently confer any constitutional rights that may support a § 1983 claim. Accordingly, plaintiff's Ninth Amendment claim must also be dismissed. *Barnett v. Carberry*, 420 Fed.Appx. 67, 69 (2d Cir. 2011) (holding that the Ninth Amendment does not provide "an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases") (citation omitted), *cert. denied*, 132 S.Ct. 248 (2011); *Bussey v. Phillips*, 419 F.Supp.2d 569, 586 (S.D.N.Y. 2006) ("[T]he Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees.").

## Conclusion

For the foregoing reasons, defendants' motion to dismiss the Amended Complaint is **GRANTED**. The Amended Complaint is dismissed in its entirety, with prejudice to the federal claims therein because the court finds that leave to amend would be futile. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Mercado v. Quantum Servicing Corp.*, No. 15–CV–1500, 2015 WL 1969028, at \*5 (E.D.N.Y. Apr. 29, 2015). To the extent plaintiff alleges any state law claims, the court declines to exercise jurisdiction over these claims and therefore, these claims are dismissed without prejudice.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order on the *pro se* plaintiff and note service on this docket within three days of entering this Memorandum and Order. The Clerk of Court is further respectfully requested to enter judgment in favor of defendants, to serve the *pro se* plaintiff with a copy of the judgment and the appeals packet, and to close this case.

**SO ORDERED.**

Dated: September 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5372792

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2826457

KeyCite Yellow Flag - Negative Treatment

Disagreed With by   Dawkins v. State University of New York at Cortland, N.D.N.Y.,   July 11, 2024

2021 WL 2826457
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jane DOE and Jane Roe, Plaintiffs,

v.

The NYS OFFICE OF CHILDREN AND FAMILY
SERVICES, Taberg Residential Center for Girls, "John"
Montana, "John" Diego, "John" Murphy, "John" Aiello,
"John" Smith, and John and Jane Does 1–5, Defendants.

1:20-cv-01195 (BKS/CFH)
|
Signed 07/07/2021

**Attorneys and Law Firms**

For Plaintiffs: Vik Pawar, Pawar Law Group P.C., 20 Vesey
Street, Suite 1410, New York, New York 10007.

For Defendants New York State Office of Children and
Family Services, Montana, Murphy, Aiello, and Smith: Letitia
James, Attorney General for the State of New York, Shannan
C. Krasnokutski, Assistant Attorney General, The Capitol,
Albany, New York 12224.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiffs Jane Doe and Jane Roe bring this action
against the New York State Office of Children and Family
Services ("OCFS") and Taberg Residential Center for Girls,
as well as Montana, Diego, Murphy, Aiello, Smith, and five
John and Jane Doe defendants. [1] (*See generally* Dkt. No. 1).
Plaintiffs allege the following federal claims under 42 U.S.C.
§ 1983: First Amendment retaliation, Fourteenth Amendment
substantive due process, Fourth Amendment unreasonable
seizure and excessive force, Fourteenth Amendment equal
protection, supervisory liability, and failure to intervene. (Dkt.
No. 1). Plaintiffs also allege state law claims, including:
assault and battery, harassment, intentional and negligent
infliction of emotional distress, violations of the New York

Constitution, New York Civil Rights Law, and New York
Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§
296(1), (6), negligent screening, training, hiring and retention,
negligence, and respondeat superior. (*Id.*). Defendants OCFS,
Montana, Murphy, Aiello, and Smith [2] move to dismiss
the complaint under Federal Rule of Civil Procedure 12(b)
(6) and for partial summary judgment under Rule 56 on
the ground that Plaintiff D.B.'s claims were filed after the
statute of limitations expired. (Dkt. No. 13). Plaintiffs oppose
Defendants' motion and cross-move under Rule 15 to file
an amended complaint. (Dkt. No. 21). For the reasons that
follow, the parties' motions are granted in part and denied in
part.

[1]   As the proposed amended complaint substitutes
D.B. and C.P. for Plaintiffs "Jane Doe" and "Jane
Roe," (Dkt. No. 21-1, at 1), going forward, the
Court refers to Plaintiffs as D.B. and C.P. and
directs the Clerk of the Court to amend the caption
accordingly. In addition, the proposed amended
complaint provides the first names for Defendants
Montana, Murphy, Aiello, and Smith, and names
Sussana Tillino as a Defendant.

[2]   Taberg Residential Center for Girls and "John"
Diego have not appeared in this action. Plaintiffs
have been unable to locate, and therefore have not
served, Diego. (Dkt. No. 21-2, at 6 n.1).

**II. FACTS** [3]

[3]   The facts are drawn from the proposed Amended
Complaint. The Court assumes the truth of, and
draws reasonable inferences from, the well-pleaded
factual allegations. *Faber v. Metro. Life Ins. Co.*,
648 F.3d 98, 104 (2d Cir. 2011). Defendants
also move for partial summary judgment and
have submitted several documents in support of
their motion but the Court, for the reasons stated
*infra* Section IV.B.1., has not considered those
documents and has confined its review to the
complaint and proposed amended complaint.

Taberg Residential Center for Girls is a "limited secure
facility," where "juveniles can be placed pursuant to order
of" New York Courts. Dkt. No. 21-1. Taberg "offers various
services to juvenile girls in all areas from counseling to
medical and mental health services." (*Id.* ¶ 18). Defendants
Sussana Tillino, Michael Montana, Jamie Murphy, Joseph
Aiello, and Ryan Smith were employed by Taberg while

2021 WL 2826457

Plaintiffs were residents there. (*Id.* ¶¶ 21–24). Tillino "was the site director at Taberg and responsible for the supervision of the staff at Taberg." (*Id.* ¶ 25). Montana, Murphy, Aiello, and Smith held the job titles of "Youth Div. Aide," "correctional or security officers, juvenile counselors, [or] mentors." (*Id.* ¶¶ 33, 38).

**\*2** Plaintiffs D.B. and C.P., who were "considered 'juvenile delinquents,' " were placed at Taberg by New York Courts "working in conjunction with" OCFS. (*Id.* ¶¶ 12, 31). D.B., born in 1998, was a "juvenile resident" at Taberg from July 2014 to October 2015—age 15 to 16.[4] (*Id.* ¶¶ 27–28). C.P., born in 2000, was a "juvenile resident" "on various occasions" from January 2014 to October 2018—age 13 to 17. (*Id.* ¶¶ 28–30). Upon placement at Taberg, D.B. and CP were "admonished that ... they were expected to abide by the rules and regulations, and that they were subject to punishment of various degrees if they did not adhere thereto." (*Id.* ¶ 32).

[4]     Since her date of birth is in a document extraneous to the complaint, and not properly before the Court, and in order to afford D.B. every benefit of the doubt, the Court utilizes the latest possible date on which D.B. could have been born in 1998— December 31, 1998. The Court likewise utilizes December 31, 2000 for C.P.

### A. Defendant Michael Montana

Montana, who wore a uniform and carried metal handcuffs, a radio, state identification, and a flashlight, was a "mentor" or "Youth Div. Aide" at Taberg. (Dkt. No. 21-1, ¶¶ 38, 50). Montana "use[d] his influence to groom both plaintiffs and then use[d] that same power to physically and sexually abuse them." (*Id.* ¶ 41). Montana "purchase[d] contraband and other items for plaintiff to gain their compliance with his sexual demands." (*Id.* ¶ 44). These items included outside food from McDonald's or Subway or Chinese restaurants, which "was not otherwise permitted or available" to residents, as well as soaps, sponges, mp3 players, "[f]uzzy" pillows, and comforters. (*Id.* ¶ 44).

Montana engaged in unprotected sex with D.B. and C.P. and had "sex with the plaintiffs whenever the opportunity arose." (*Id.* ¶¶ 46, 49). Montana would "push a big chair against the door so to prevent others entry to the places where the sexual encounters were taking place." (*Id.* ¶ 55). When Plaintiffs voiced concern about unprotected sex or STDs, Montana would "boast that he [was] clean," ask about birth-control, and "warn them that they 'better not

get pregnant.' " (*Id.* ¶¶ 47–48). Montana "would take off his uniform wearing only his white undershirt when he was engaged in sexual contact with the plaintiffs" and would "put his hands over" Plaintiffs' mouths "to silence the noise or prevent them from screaming" during sex. (*Id.* ¶¶ 51, 53). In addition to engaging in sexual intercourse, Montana would direct Plaintiffs to pose nude while he pleasured himself and gave Plaintiffs " 'nickies': hickies that Montana would plant on their faces, shoulders, arms and necks." (*Id.* ¶¶ 56, 61). Following sexual encounters, Montana "would ... squeeze handcuffs tighter on plaintiffs as if they were at fault for [the] sexual encounter." (*Id.* ¶ 64). The physical and sexual assaults were violent, leaving Plaintiffs with "rug burns" and bodily injuries that required medical attention. (*Id.* ¶ 60). Montana would also gesture at Plaintiffs with his handcuffs and flashlight, issuing "veiled threats by suggestion that he could do a lot more to plaintiffs with his power if they 'ever crossed the line.' " (*Id.* ¶ 67).

Montana was also "in charge of assigning 'restrain time' to the plaintiffs," and would offer "to reduce that time" in exchange for sex. (*Id.* ¶ 45). Montana also had access and permission to "utilize physical restraints," which he used "on both plaintiffs almost on a daily basis." (*Id.* ¶ 42). Montana physically assaulted Plaintiffs and "verbally abuse[d] them when he unnecessarily used restraints on them"; Montana called Plaintiffs "his 'bitches.' " (*Id.* ¶ 59). When using physical restraints on Plaintiffs, Montana "would do so in such a manner to physically cause undue pain and suffering to plaintiffs," using "his hands" to "beat" them, which he "seemed to enjoy." (*Id.* ¶¶ 62–63).

**\*3** Montana "had a close relationship" with Director Tillino, "who allowed Montana to essentially 'run the place.' " (*Id.* ¶ 65). Montana "would have himself assigned to late hour 'suicide watch' duty for plaintiffs," where he would "be in a position of privacy for the purpose of sexual encounters with the plaintiffs." (*Id.* ¶ 54). "Montana was in charge of security cameras and conducted his activity in the 'blind spots' so that" his sexual activity with Plaintiffs "could not be observed or recorded." (*Id.* ¶ 55). Montana's sexual encounters with Plaintiffs took place in their individual cells, the front wing rooms by the gymnasium, the youth counselor's office, the staff lounge, and Director Tillino's office. (*Id.* ¶ 52).

### B. Defendants Jamie Murphy and Ryan Smith

Plaintiffs allege that Murphy and Smith "used the same grooming process and would [also] sexually and physically assault both plaintiffs." (Dkt. No. 21-1, ¶ 68). They insisted

2021 WL 2826457

Plaintiffs "call them 'Daddy' and would refer to ... plaintiffs as their 'princess.' " (*Id.* ¶ 69). Murphy and Smith passed messages to Plaintiffs on scrap paper, where they wrote "explicit and erotic messages" about engaging in sexual acts with Plaintiffs. (*Id.* ¶ 71). Murphy and Smith "brush[ed] up against Plaintiff's [sic] bodies," moved "into a position behind them and grinding their genital area against [Plaintiffs'] buttocks," while commenting "[b]etcha that feels good, don't it." (*Id.* ¶ 73). Murphy and Smith "exposed themselves to plaintiffs and repeatedly request[ed] that they expose their private parts to them." (*Id.* ¶ 74). When Plaintiffs refused Murphy and Smith's sexual advances, "they became physically abusive" by "pushing them off balance and pushing them into walls." (*Id.* ¶ 75).

### C. Defendants Joseph Aiello and "John" Diego

Plaintiffs acknowledge that Aiello and Diego did not engage in sexual contact with them but allege that these Defendants "used unnecessary force and restraints on the plaintiffs," "press[ed] their knees on plaintiffs' backs and yank[ed] their arms in a violent fashion behind their backs and tightly handcuff[ed] them," "punch[ed] and kick[ed] them," held Plaintiffs "down on the hard floor" and "spit on" them. (Dkt. No. 21-1, ¶¶ 76–80).

### D. Defendant Susan Tillino

Director Tillino, the Site Director at Taberg, supervised Defendants and "personally witnessed the physical assaults but failed to reign in the defendants." (Dkt. No. 21-1, ¶ 85). Tillino gave Defendants "power to do as they wished"—giving them keys and allowing Defendants to make their own hours and to bring in contraband or outside items for Plaintiffs. (*Id.* ¶¶ 83–86). Plaintiffs assert that "the fact they could get away" with "sexual contact and physical abuse" "meant they were being protected by Tillino." (*Id.* ¶ 88).

## III. STANDARD OF REVIEW

### A. Motion to Amend – Fed. R. Civ. P. 15

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.' " *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting

*Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). Since Defendants have had a full opportunity to respond to the proposed amendments and the primary claims remain the same, the Court considers the merits of the motion to dismiss in light of the proposed amended complaint. If the claims in the proposed amended complaint cannot survive the motion to dismiss, then Plaintiffs' cross-motion to amend will be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

### B. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## IV. DISCUSSION

### A. Plaintiffs' Withdrawal of Claims

In moving to amend the complaint, Plaintiffs have dropped OCFS and Taberg as Defendants and have withdrawn their § 1983 First Amendment retaliation, denial of equal protection, and failure to intervene claims. (Dkt. No. 21-2, at 8). Defendants do not oppose this aspect of Plaintiffs' motion. (Dkt. No. 22, at 8 n.3). Accordingly, the Court grants Plaintiffs' motion to amend as to the withdrawal of their claims against OCFS and Taberg, and their withdrawal of their First Amendment retaliation, denial of equal protection, and failure to intervene claims, and denies Defendants' motion to dismiss these three federal claims as well as the claims against OCFS as moot.

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 39 of 51

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

### B. Plaintiff D.B.'s § 1983 Claims

#### 1. Statute of Limitations

Defendants seek partial summary judgment[5] dismissing Plaintiff D.B.'s § 1983 claims as barred by the statute of limitations. (Dkt. No. 13-7, at 29–31). Their motion is denied as procedurally deficient. According to the Local Rules, "any motion for summary judgment shall contain a separate Statement of Material Facts." N.D.N.Y. L.R. 56.1(a). Defendants' motion did not. Thus, to the extent they move for summary judgment on statute of limitations grounds, it is denied. *See id.* ("Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."). However, as the proposed amended complaint provides D.B.'s birth year, 1998,[6] (Dkt. No. 21-1, at 4), Defendants' statute of limitations defense may be decided on their Rule 12(b)(6) motion, without resort to documents outside the complaint. *See Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

[5]     Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As Defendants have not met the procedural requirements for a motion for summary judgment, the Court considers their argument under the standard of review applicable to a motion to dismiss under Rule 12(b)(6) and does not set out the summary judgment standard in its entirety.

[6]     The documents Defendants filed disclose the month and date of D.B.'s date of birth, but as D.B.'s twenty-first birthday—the date Defendants contend the statute of limitations expired—could

have occurred no later than December 31, 2019, and the complaint was filed on September 29, 2020, the month and date of D.B.'s birthday are unnecessary to the determination in this case.

**\*5** Defendants assert that when D.B., who was born in 1998, turned eighteen in 2016, she had three years under New York's infancy tolling provision—until 2019—to file her § 1983 claims and that her complaint, filed on September 29, 2020 is barred by the statute of limitations. (Dkt. No. 13-7, at 29–31). Defendants further argue that New York's Child Victims Act ("CVA"), 2019 N.Y. Sess. Laws c. 11, § 3, which amended several provisions of the New York Civil Practice Law and Rules to revive expired claims and extend the statute of limitations for civil claims of sexual abuse committed against minors,[7] is inapplicable to § 1983 claims, (Dkt. No. 13-7, at 29–31). D.B. opposes Defendants' motion and argues that the CVA "explicitly provides for tolling of the statute of limitations for victims of child abuse." (Dkt. No. 21-2, at 19). D.B. was a minor at the time the alleged sexual abuse that forms the basis for her § 1983 claims was committed, thus, in addition to the statute of limitations, the Court must consider the issue of tolling.

[7]     The CVA, signed into law on 2019, included the revival statute, N.Y. C.P.L.R. § 214-g (reviving statute of limitations for sexual abuse claims that had expired in cases where the abuse was committed against "a child less than eighteen years of age"), and extended time periods for filing civil actions based on sexual abuse, *see, e.g.*, N.Y. C.P.L.R. § 213-c (providing a twenty-year statute of limitations for sexual offenses); N.Y. C.P.L.R. § 208(b) (allowing a plaintiff with a civil claim of sexual abuse committed against her when she was less than eighteen years old to commence an action until she "reaches the age of fifty-five").

As "[s]ection 1983 does not provide a specific statute of limitations," *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013), courts must borrow from "state-law limitations provisions." *Owens v. Okure*, 488 U.S. 235, 239, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). While 42 U.S.C. § 1988 "endorses the borrowing of state law limitations provisions" in § 1983 cases, it "offers no guidance as to which state provision to borrow." *Owens*, 488 U.S. at 239, 109 S.Ct. 573. In *Owens*, the Supreme Court addressed "the question of what limitations period should apply to a § 1983 action where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for

2021 WL 2826457

all other personal injury actions." 488 U.S. at 236, 109 S.Ct. 573. There, the plaintiff filed a § 1983 action alleging that the defendant police officers unlawfully arrested, "battered," and beat him, causing physical injury. 488 U.S. at 237, 109 S.Ct. 573. Contending "that § 1983 actions were governed by New York's 1–year statute of limitations covering ... intentional torts," including false imprisonment, battery, and assault, the defendants moved to dismiss the complaint, "filed 22 months after the alleged incident, as time barred." *Id.* The Court rejected the defendants' argument "that courts should borrow the intentional tort limitations periods because intentional torts are most analogous to § 1983 claims fails" finding that the analogy failed "to recognize the enormous practical disadvantages of such a selection," was "too imprecise," and contravened *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." *Owens,* 488 U.S. at 248, 109 S.Ct. 573. The Supreme Court observed that "[i]n marked contrast to the multiplicity of state intentional tort statutes of limitations, every State has one general or residual statute of limitations governing personal injury actions," enabling "[p]otential § 1983 plaintiffs and defendants [to] readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action." *Id.* It concluded:

> Given that so many claims brought under § 1983 have no precise state-law analog, applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope. We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.

**\*6** The Court of Appeals therefore correctly applied New York's 3–year statute of limitations governing general personal injury actions to [the plaintiff's] claim.

*Id.* at 249–51. The Court, therefore, must apply New York's three-year general statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214(5); *see Lucente v. Cty. of Suffolk,* 980 F.3d 284, 308 (2d Cir. 2020) ("The statute of limitations for § 1983 actions arising in New York is three years." (citing *Owens,* 488 U.S. at 250–51, 109 S.Ct. 573)). Accordingly, the Court turns to tolling.

"The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but

also its 'tolling rules,' unless applying the state's tolling rules 'would defeat the goals of the federal statute at issue.' " *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002) (citations omitted) (first quoting *Board of Regents v. Tomanio,* 446 U.S. 478, 484–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); and then quoting *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)). It is well-settled that in evaluating a § 1983 claim stemming from conduct that occurred when the plaintiff was a minor, courts apply New York's infancy tolling provision, N.Y. C.P.L.R. § 208(a), which provides that the three-year statute of limitations does not begin to run until the plaintiff turns eighteen. *Pearl,* 296 F.3d at 84 ("In the pending case, we clearly borrow New York's rule of tolling during infancy, *see* N.Y. C.P.L.R. § 208 (McKinney 1990), and therefore the statute of limitations ran on Pearl's section 1983 claims on September 29, 1971, three years after his eighteenth birthday.").

Here, D.B. was born in 1998 and was therefore an infant at the time of claim accrual, July 2014 (age 15) to October 2015 (age 16). New York tolling laws provide that the three-year statute of limitations is tolled until a plaintiff reaches eighteen years of age. N.Y. C.P.L.R. § 208(a); *Abbas v. Dixon,* 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled."). Applying N.Y. C.P.L.R. § 208(a), D.B. had until December 31, 2019, (age 21), at the latest, to file the complaint. The complaint, however, was filed on September 29, 2020, at least nine months after the statute of limitations and tolling period expired. (Dkt. No. 1).

Recognizing this problem, D.B. argues the CVA, specifically, N.Y. C.P.L.R. §§ 213-c, 214-g, and 208(b), renders her claims timely. (Dkt. No. 21-2, at 19). D.B.'s arguments, addressed in turn below, are unavailing.

Section 213-c contains a twenty-year statute of limitation for "conduct constituting certain sexual offenses." But, as discussed, the Supreme Court requires that the Court apply N.Y. C.P.L.R. § 214(5), New York's three-year statute of limitations governing general personal injury actions. *See Owens,* 488 U.S. 248 (noting that the "the practice of drawing narrow analogies between § 1983 claims and state causes of action" for purposes of determining the statute of limitations has been "expressly rejected"). Accordingly, D.B.'s argument regarding § 213-c is without merit.

2021 WL 2826457

For the same reason, the Court concludes that D.B.'s argument that the CVA revives her § 1983 claim, also fails. Section 214-g states, in relevant part:

> **\*7** Every ... cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense ... committed against a child less than eighteen years of age, which is barred ... because the applicable period of limitation has expired, ... is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y.C.P.L.R. § 214-g. In *Boyle v. North Salem Central School District*, No. 19-cv-8577, 2020 WL 2319116, at \*3, 2020 U.S. Dist. LEXIS 82504, at \*8 (S.D.N.Y. May 11, 2020), the court reached the same conclusion, and rejected the plaintiff's contention that § 214-g applied to revive his otherwise untimely § 1983 sexual abuse claim. D.B. urges the Court to reject "the rationale underlying" *Boyle*, (Dkt. No. 21-2, at 19), but identifies no error in the rationale—nor does the Court perceive one. In *Boyle*, the court adhered to the Supreme Court's instruction in *Owens* and applied New York's three-year "general or residual statute of limitations" to the plaintiff's claim, explaining:

> Although Section 214-g extends the statute of limitations for state law claims respecting child sexual abuse, it does not extend the statute of limitations for Section 1983 claims. This is because "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." As noted above, in New York, the applicable general or residual statute of limitations applicable to plaintiff's Section 1983 claim is three years.

*Boyle*, 2020 WL 2319116, at \*3, 2020 WL 2319116, at \*8 (internal citation omitted) (quoting *Anthes v. New York*

*Univ.*, No. 17-cv-2511, 2018 WL 1737540, at \*10, 2018 U.S. Dist. LEXIS 53762, at \*25 (S.D.N.Y. Mar. 12, 2018)). As discussed, the Supreme Court long ago prohibited the practice of utilizing the statute of limitations of the state tort "most analogous" to the pending § 1983 claim and instructed "courts considering § 1983 claims" to instead "borrow the general or residual statute for personal injury actions," which, in New York is the three-year statute of limitations contained in N.Y. C.P.L.R. § 214(5). *Owens*, 488 U.S. at 248, 250, 109 S.Ct. 573. Accordingly, D.B.'s arguments regarding § 214-g are without merit.

D.B. next argues that even if § 214-g is inapplicable, the CVA's extensive tolling provisions apply. (Dkt. No. 21-2, at 19). In amending the N.Y. C.P.L.R., the CVA amended § 208, which contains New York's infancy and insanity tolling provisions, to add subsection (b), which provides, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary ... with respect to all civil claims or causes of action brought by any person for ... injury or condition suffered by such person as a result of conduct which would constitute a sexual offense ... which conduct was committed against such person who was less than eighteen years of age ... such action may be commenced, against any party ... on or before the plaintiff or infant plaintiff reaches the age of fifty-five years.

N.Y. C.P.L.R. § 208(b). D.B. argues that this is a tolling provision and acts to toll her § 1983 sexual abuse claims. (Dkt. No. 22, at 10–13). The Court disagrees. Though it follows subsection a, which is, as discussed, New York's infancy tolling provision, subsection b appears to be a statute of limitations provision—not a tolling provision. N.Y. C.P.L.R. § 208. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.' " *CTS Corp. v. Waldburger*, 573 U.S. 1, 7, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) (quoting Black's Law Dictionary 1546 (9th ed. 2009)). In contrast, tolling "pauses the running of, or tolls, a statute of limitations." *CTS Corp.*, 573 U.S. at 9, 134 S.Ct. 2175 (internal quotation marks omitted). Unlike §

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 42 of 51

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

208(a), which prevents the three-year statute of limitations from beginning to run until the plaintiff has turned eighteen, § 208(b) allows a plaintiff whose sexual abuse claim accrued while a minor to sue until age fifty-five, after which the claim is barred. The Court therefore concludes that N.Y. C.P.L.R. § 208(b) is a statute of limitations provision. *See also* Child Victims Act, New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019) (explaining that subsection (b) amends "the statute of limitations in civil actions alleging conduct which would constitute a sexual offense against a child under the age of 18. Under current law, the statute of limitations typically begins to run when the victim turns 18, and the statute of limitations ranges from one year to five years depending on the type of claim being brought. This section, as amended, now permits all civil claims or causes of action brought for ... a sexual offense ... up until the victim reaches 55 years of age").

**\*8** As the Court must apply the state's general personal injury three-year statute of limitations, N.Y. C.P.L.R. § 214(5), the statute of limitations were tolled for infancy under § 208(a) until December 31, 2016, when D.B. turned eighteen, at which point the statute of limitations began to run. They expired three years later, on December 31, 2019. As D.B. filed her § 1983 claims on September 29, 2020, nearly nine months after the statute of limitations expired, they are time-barred. Accordingly, Defendants' motion to dismiss D.B.'s § 1983 claims as time-barred is granted and D.B.'s cross-motion to amend with respect to her § 1983 claims is denied as futile.

### 2. Supplemental Jurisdiction

In their reply, Defendants argue that because D.B.'s state law claims do not form "part of the same 'case or controversy' with any... federal claims asserted by co-plaintiff C.P.," in the event D.B.'s § 1983 claims are dismissed, D.B.'s state law claims must also be dismissed for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a). (Dkt. No. 22, at 12). Defendants did not raise this argument in their initial memorandum; they argued only "in the event that all of the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims." (Dkt. No. 13-7, at 31). Thus, by failing to initially brief it, Defendants "preclud[ed] the plaintiff from offering a meaningful response" to whether the Court should continue to exercise supplemental jurisdiction [8] over D.B.'s state law claims. *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 48 F. Supp. 2d 198, 208 (N.D.N.Y. 1999) (quoting *Mercer Tool Corp. v. Friedr. Dick GmbH*, 179 F.R.D. 391, 398 (E.D.N.Y.

1998)). The Court, therefore, does not consider this argument. *See Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief."). However, the question of supplemental jurisdiction over state-law claims must be "consider[ed] and weigh[ed] in each case, at every stage of the litigation." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Accordingly, the Court grants Defendants leave to renew this argument.

8    D.B.'s § 1983 and state law claims (for, inter alia, assault and battery, harassment, and intentional infliction of emotional distress) undoubtedly arise from "the same 'common nucleus of operative fact' ": they all stem from Defendants' alleged sexual and physical abuse of her while she was a juvenile resident at Taberg. *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (explaining that in determining whether claims "form part of the same case or controversy, courts look at whether "the federal claim and state claim ... stem from the same 'common nucleus of operative fact' " and are "such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.' " (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Therefore, the Court, at least at the outset of this case, had supplemental jurisdiction over D.B.'s state law claims under § 1367(a).

### C. Applicability of Fourth and Fourteenth Amendments to C.P.'s § 1983 Claims [9]

9    As Plaintiff D.B.'s § 1983 claims are barred by the statute of limitations, the Court only considers Plaintiff C.P.'s § 1983 claims.

Before addressing the parties' substantive arguments, the Court notes that C.P. asserts her sexual abuse and excessive force claims under the Fourth and Fourteenth Amendments and that the parties assume the applicability of both Amendments in their papers. (Dkt. No. 13-7, at 19–22; Dkt. No. 21-2, at 13–16). It appears, however, that the appropriate standard is the Fourteenth Amendment. According to the proposed amended complaint, OCFS placed C.P. at Taberg, a residential facility, as a "juvenile

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

delinquent." (Dkt. No. 21-1, ¶ 12). The New York Family Court Act provides that: "No adjudication under this article may be denominated a conviction and no person adjudicated a juvenile delinquent shall be denominated a criminal by reason of such adjudication." N.Y. Fam. Ct. Act § 380.1(1). As such, C.P. was "being held in non-criminal custody as [a] juvenile[ ]." *G.B. ex rel. T.B. v. Carrion*, No. 09-cv-10582, 2012 WL 13071817, at *16, 2012 U.S. Dist. LEXIS 200619, at *63 (S.D.N.Y. Jan. 19, 2012) (citing N.Y. Fam. Ct. Act § 380.1(1)). It therefore appears that the Due Process Clause of the Fourteenth Amendment governs C.P.'s sexual abuse and excessive force claims. *See Jackson v. Johnson*, 118 F. Supp. 2d 278, 287 (N.D.N.Y. 2000) (applying Fourteenth Amendment standard to constitutional claims of excessive force in juvenile detention facilities); *G.B.*, 2012 WL 13071817, at *2, 16, 2012 U.S. Dist. LEXIS 200619, at *23, 63-64 (analyzing excessive force claims brought by juveniles placed in "OCFS facilities as a result of juvenile delinquency proceedings in New York State Family Court" under the Fourteenth Amendment); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any matter—neither cruelly and unusually nor otherwise.' " (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). As the parties have not addressed this issue, and the parties' arguments are such that this issue is not outcome-determinative, the Court does not resolve this issue here.

### D. Substantive Due Process Claims

**\*9** Defendants Montana, Murphy, Aiello, and Smith move to dismiss C.P.'s substantive due process claims on the grounds that, as alleged, (1) her claims of "sexual assault" and excessive force against Montana, Murphy, and Smith "fail[ ] to set forth sufficient factual context to render the allegations plausible," and (2) the conclusory excessive force allegations against Aiello "are insufficient to demonstrate ... personal involvement." (Dkt. No. 13-7, at 19–21). C.P. responds that the proposed amended complaint cures the original complaint's purported lack of specific allegations by adding detailed, "specific acts performed by the individual defendants." (Dkt. No. 21-2, at 13–14).

To allege a violation of substantive due process against a state actor, a plaintiff must allege a deprivation of a "fundamental liberty interest," *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)),

or "a valid 'property interest' in a constitutionally-protected benefit," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable governmental interference." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772, (1997)).

"[T]he Due Process Clause 'does not transform every tort committed by a state actor into a constitutional violation.' " *Id.* (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). The Due Process Clause is violated "only when [the defendant's conduct] can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018). With respect to Fourteenth Amendment excessive force claims, the Second Circuit has noted that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015) elaborates on what is conscience shocking, and that "*Kingsley* provides the appropriate standard." *Edrei*, 892 F.3d at 536–37. "*Kingsley* held that excessiveness is measured objectively and then identified various considerations that inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate government objective." *Id.* (citing *Kingsley*, 576 U.S. at 397, 135 S.Ct. 2466). In short, "*Kingsley* teaches that purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience shocking." *Edrei*, 892 F.3d at 536.

### 1. Sexual Abuse

Defendants assume "for purposes of this motion" that C.P.'s allegations of sexual abuse allege egregious, outrageous action that "shock[s] the contemporary conscience." (*See* Dkt. No. 13-7, at 20 ("Defendants assume for purposes of this motion that allegations of sexual assault, as a general matter, may meet the conscience-shocking standard.")). Indeed, in view of the allegations, that Montana, Murphy, and Smith, employees at Taberg, sexually abused C.P. by raping her, brushing their genitals against her, and exposing themselves to her while she was "juvenile resident" at Taberg "on various occasions" from January 2014, when she was 13, to October 2018, when she was 17, any argument that C.P. failed to state a legally cognizable substantive due process claim would

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

fail. *See, e.g., JG & PG ex rel. JGIII v. Card*, No. 08-cv-5668, 2009 WL 2986640, at *2, 6, 2009 U.S. Dist. LEXIS 85372, at *7, 16 (S.D.N.Y. Sept. 17, 2009) (finding that the plaintiffs stated cognizable substantive due process claim where they alleged that teachers "engaged in inappropriate sexual conduct in front of Plaintiff–Children, including grabbing each others' breasts and bottoms, massaging each other, exposing themselves to the students, and carrying on sexually explicit conversations" and "photographed Plaintiff–Children's private parts"). Instead, Defendants' argument focuses on the purported lack of specific detail in the complaint and amended complaint—they argue that both C.P. fails to state a plausible claim for relief because she does not "specify any particular incident" in which she or Defendants were involved, "the events that occurred on such occasion," or "the specific conduct in which these Defendants are claimed to have engaged," (Dkt. No. 13-7, at 20), or specify a date "or even time periods for any claimed incident," (Dkt. No. 22, at 14). This argument is unavailing.

**\*10** "The federal rules continue to require only notice pleading," *Medina v. Whitehead*, No. 13-cv-885, 2014 WL 3697886, at *2, 2014 U.S. Dist. LEXIS 100653, at *5 (D. Conn. July 24, 2014), and "[s]pecific facts are not necessary"; the complainant "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Here, the proposed amended complaint identifies Defendants Montana, Murphy, and Smith, informs them that C.P. is asserting substantive due process claims against them on the grounds that on numerous occasions from 2014 to 2018, while she was a juvenile resident at Taberg: (1) Montana subjected her to violent sexual assaults, including sexual intercourse, blockaded doors to prevent discovery, and covered her mouth to prevent her from screaming, numerous times while she was a juvenile resident at Taberg from 2014 to 2018; and (2) Murphy and Smith subjected her to sexual contact by "grinding their genital area against Plaintiff's [sic] bod[y]," (Dkt. No. 21-1, ¶ 73), and exposing themselves to her, (*id.* ¶¶ 71–72).

While the allegations against Murphy and Smith are identical, specificity as to their individual actions is not required where, as here, the proposed amended complaint identifies them as Taberg employees, and informs them that they are both alleged to have subjected C.P. to sexual abuse while she was a Taberg resident, (*id.* ¶¶ 71–73). *See Buari v. City of New York*, No. 18-cv-12299, 2021 WL 1198371, at *16, 2021 U.S. Dist. LEXIS 61273, at *46 (S.D.N.Y. Mar. 30, 2021) (explaining that "specificity as to each NYPD Defendant's individual actions is not required where, as here, the complaint 'give[s] each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" (quoting *Southerland v. N.Y.C. Hous. Auth.*, No. 10-cv-5243, 2010 WL 4916935, at *2, 2010 U.S. Dist. LEXIS 124716, at *6 (E.D.N.Y. Nov. 23, 2010)); *Goldring v. Davidson*, No. 18-cv-06201, 2020 WL 1547464, at *5, 2020 U.S. Dist. LEXIS 57703, at *15 (S.D.N.Y. Apr. 1, 2020) (finding allegations sufficient where the plaintiff alleged the individual defendants' "positions at [the correctional facility] and their role in the alleged violations").

Moreover, the factual allegations detailing Montana, Murphy, and Smith's alleged conduct, including violent sexual assault leaving rug burns, grinding genitals against C.P., exposing their private parts to C.P., dispel Defendants' assertion that Plaintiff's claims are conclusory. While the proposed amended complaint contains no specific dates, C.P. alleges an ongoing course of conduct during her placement at Taberg from 2014 to 2018, thus the omission of specific dates does not provide a basis for dismissal. *See, e.g., Medina*, 2014 WL 3697886, at *2, 2014 U.S. Dist. LEXIS 100653, at *5 (rejecting the defendants' argument that the plaintiff's failure to allege, among other things, "the dates on which four inmates attempted to start a fight" or the names of those inmates, in support of his deliberate indifference to safety claim, explaining that notice pleading does not require "[t]he plaintiff ... to plead the myriad details described by the defendants"). The Court therefore concludes that the proposed amended complaint states a plausible claim for relief under the Fourteenth Amendment in connection with C.P.'s sexual abuse claims against Defendants Montana, Murphy, and Smith.

## 2. Excessive Force

Montana, Murphy, Smith, and Aiello argue that C.P.'s substantive due process excessive force claims must be dismissed as "generalized and conclusory" and lacking in factual context. (Dkt. No. 13-7, at 20). Aiello further argues that the proposed amended complaint fails to allege his personal involvement. (Dkt. No. 22, at 15).

The proposed amended complaint alleges that while using "restraints" on C.P., Montana "used his hands" to beat C.P., (Dkt. No. 21-1, ¶¶ 62–63), and squeezed handcuffs "tighter"

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

on C.P. after "sexual encounter[s]," (*id.* ¶ 64). As to Murphy and Smith, C.P. alleges that they pushed her "off balance" and "into walls" after she verbally rebuffed their sexual advances. (*Id.* ¶ 75). C.P. alleges that Aiello "used unnecessary force and restraints" on her, pressed his knees on C.P.'s back, "yank[ed her] arms in a violent fashion behind [her] back and tightly handcuff[ed] them," punched and kicked her, held her down on a hard floor, and spit on her. (*Id.* ¶¶ 77–80). While these allegations are somewhat indistinct, the allegations against Montana, Murphy, and Smith, read in light of the allegations that these Defendants used force in connection with the sexual conduct they directed toward and sought to elicit from C.P., as well as after she rebuffed their overtures, not only advise them that she is asserting excessive force claims against them for physically assaulting her while a juvenile resident in their care, but sufficiently allege Defendants knowingly used an objectively unreasonable degree of force. *Edrei*, 892 F.3d at 536. The allegations against Aiello, while lacking a date or setting, or indeed any surrounding circumstances, alleges that Aiello punched and kicked C.P. while she was handcuffed and spit on her. These allegations of force against an already restrained minor, together with the allegation that Aiello spit on her, are sufficient to allege Aiello's personal involvement. *See Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (explaining that in a § 1983 action, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). Accordingly, Defendants' motion to dismiss C.P.'s Fourteenth Amendment claims is denied and C.P.'s motion to amend as to her Fourteenth Amendment claims is granted.

### E. Fourth Amendment Excessive Force Claim

**\*11** Defendants assert C.P.'s Fourth Amendment excessive force claims fail for the same reasons her Fourteenth Amendment claims fail: the allegations are "conclusory and undifferentiated" [10] as to Montana, Murphy, Smith, and Aiello. (Dkt. No. 13-7, at 22). And because, as state above, the Court concludes that the allegations in the proposed amended complaint give these Defendants fair notice of the claims against them and the ground on which they rest, [11] *see* supra Section IV.D., the Court denies Defendants' motion to dismiss C.P.'s Fourth Amendment claims and grants Plaintiff's cross-motion to amend.

[10]    The parties have not addressed how the traditional Fourth Amendment excessive force analysis applicable to seizures and arrests applies under

the circumstance of this case, i.e. to juveniles in custody.

[11]    Defendants also suggest that the proposed amended complaint engages in impermissible group pleading. (Dkt. No. 13-7, at 22; Dkt. No. 22, at 16). "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-cv-6015, 2017 WL 4357339, at \*7, 2017 U.S. Dist. LEXIS 160994, at \*18 (E.D.N.Y. Sept. 29, 2017) (citing *Ritchie v. Northern Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014)). "[G]roup pleading" violates Fed. R. Civ. P. 8(a)'s requirement that a pleading "give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, No. 11-cv-1543, 2012 WL 627238, at \*22, 2012 U.S. Dist. LEXIS 24883, at \*69 (S.D.N.Y. Jan. 27, 2012). Nevertheless, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Ausco Prods., Inc. v. Axle, Inc.*, No. 19-cv-6798, 2020 WL 7028521, at \*2, 2020 U.S. Dist. LEXIS 222771, at \*6 (W.D.N.Y. Nov. 30, 2020) (internal quotation marks and citation omitted). Here, the proposed amended complaint alerts Defendants Montana, Murphy, Smith, and Aiello, specifically, that excessive force claims are asserted against them and outlines the conduct in which they are alleged to have engaged. (Dkt. No. 21-1, ¶¶ 38–67 (Montana), 68–75 (Murphy and Smith), ¶ 76–81 (Aiello)). *Cf. Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (dismissing § 1983 claims for impermissible group pleading, where, "aside from four paragraphs that state where these defendants reside and where they are employed [the defendants were] are not mentioned anywhere in the Complaint").

### F. Defendant Tillino – Personal Involvement

C.P. asserts she has "adequately pled allegations that would sustain a claim against defendant Tillino, Taberg's Site Director, for supervisory liability" under § 1983. (Dkt. No. 21-2, at 17). As C.P. named Tillino for the first time in the proposed amended complaint, she has not yet appeared in this action, personally or through counsel, and has not been served. (Dkt. No. 22, at 17 n.8). Accordingly, the

Court solely reviews the proposed amended complaint for futility. The Second Circuit recently clarified that "there is no special rule for supervisory liability" and explained that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti, 983 F.3d at 612* (quoting *Iqbal, 556 U.S. at 676, 129 S.Ct. 1937*). The proposed amended complaint contains three specific allegations regarding Tillino: (1) that Tillino gave "keys to the defendants"; (2) that Tillino allowed "the defendants to make their own hours"; and (3) that Tillino "did not stop the defendants from bringing in the contraband/items described in the complaint." (Dkt. No. 21-1, ¶ 86). But these allegations say nothing about Tillino's actions with respect to C.P. Further, the allegation that Tillino "personally witnessed the physical assaults but failed to reign in the defendants," (Dkt. No. 21-1, at 11), lacks any specificity; it is conclusory and thus fails to state a plausible claim for relief. There is therefore no basis for liability against Tillino under § 1983. Accordingly, Plaintiffs' cross-motion to amend the complaint to add Tillino as a defendant is denied as futile. [12]

[12]    Tillino is not named in any of the state law causes of action in the proposed amended complaint.

### G. New York State Constitution Claim

**\*12** In their Seventh Cause of Action, Plaintiffs allege Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the New York State Constitution. (Dkt. No. 21-1, ¶¶ 128–29). Defendants seek dismissal of this claim on the grounds that Plaintiffs fail to allege "that they were treated differently" based on their sex and that as Plaintiffs' have "alternative remedies ... a New York Constitutional claim is not available to them." Plaintiffs apparently overlooked this, as well as Defendants' other substantive arguments, regarding their state law claims because they state in a footnote of their response that their "memorandum does not discuss the state law claims because [Defendants] have not addressed them in a substantive manner." (Dkt. No. 21-2, at 8 n.2).

"The New York State Constitution's ... equal protection provisions are at least as protective as their federal counterparts," *Wandering Dago, Inc. v. Destito, 879 F.3d 20, 40 (2d Cir. 2018)*, and "it is well-settled that sexual harassment also violates the Equal Protection Clause," *Lucente, 980 F.3d at 304* (discussing sexual assault and sexual harassment of female inmates by corrections officer

in context of and equal protection claim). However, remedies under the New York State Constitution are "narrow" and the State Constitution "provides a private right of action where remedies are *otherwise unavailable* at common law or under § 1983." *Allen v. Antal, 665 F. App'x 9, 13 (2d Cir. 2016)* (emphasis added) (citing *Brown v. State of New York, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996)* (recognizing "narrow remedy" for a constitutional tort claim brought under the State Constitution where a plaintiff otherwise has no available remedy); *see also Hollins v. City of New York, No. 10-cv-1650, 2014 WL 836950, at \*14, 2014 U.S. Dist. LEXIS 183076, at \*36 (S.D.N.Y. Mar. 3, 2014)* ("[C]ourts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy."). Because alternative remedies are available to both Plaintiffs under § 1983 or common law, Plaintiffs' state constitutional claims are dismissed, and the Court concludes that amendment would be futile. *See Allen, 665 F. App'x at 13* (affirming dismissal of state constitutional claims "[b]ecause alternative remedies were available under § 1983 and common law").

### H. New York Civil Rights Law Claim

In their Seventh Cause of Action, Plaintiffs allege that Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the New York Civil Rights Law. (Dkt. No. 21-1, ¶¶ 128–29). Defendants argue that Plaintiffs' New York Civil Rights Law claim must be dismissed for failure to indicate that they provided prior notice to the Attorney General. (Dkt. No. 13-7, at 27–28). Plaintiffs have not responded to this argument.

Although the proposed amended complaint does not refer to a specific section of the New York Civil Rights Law, (*see* Dkt. No. 21-1, ¶ 129), the Court, like Defendants, reads it as asserting a claim under § 40-c, which prohibits discrimination based on sex. [13] (Dkt. No. 13-7, at 27 (citing N.Y. Civ. Rights Law § 40-c)). However, before commencing an action under § 40-c, a plaintiff must comply with § 40-d, which requires that: "notice ... shall be served upon the attorney general" "[a]t or before the commencement of any action under this section." N.Y. Civ. Rights Law § 40-d. "New York courts have consistently held that notice to the attorney general is an essential prerequisite to actions for violations of section 40-c." *Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006)* (citing *Giaimo & Vreeburg v. Smith, 192 A.D.2d 41, 45–46, 599 N.Y.S.2d 841 (2d Dep't*

Case 6:24-cv-01091-GTS-MJK   Document 9   Filed 09/16/24   Page 47 of 51

Doe v. NYS Office of Children and Family Services, Not Reported in Fed. Supp. (2021)

2021 WL 2826457

1993)). Neither the summons nor the complaint or proposed amended complaint indicate that Plaintiffs provided notice to the attorney general. [14] Accordingly, absent an indication that notice was provided to the attorney general "[a]t or before the commencement" of this action, Defendants' motion to dismiss is granted, and Plaintiffs' cross-motion to amend is denied as futile. *See id.* (holding that "the plaintiff's claims for violations of section 40–c of the New York Civil Rights Law should be dismissed" for failing to provide notice to the attorney general); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 180 (E.D.N.Y. 2013) (granting motion to dismiss claims for violations of § 40-c where there was "no indication that the Plaintiff served notice of their action on the New York State Attorney General before commencing this action").

[13]    Section 40-c states that "[a]ll persons" are "entitled to the equal protection of the laws" and "[n]o person shall, because of ... sex ... be subjected to any discrimination in his or her civil rights, or to any harassment." N.Y. Civ. Rights Law § 40-c.

[14]    In support of their motion for partial summary judgment, Defendants submitted the claims Plaintiffs filed with the New York Court of Claims. (Dkt. Nos. 13-3, 13-4). They are noteworthy because they are addressed to the Attorney General of the State of New York and contain notice of allegations of sexual assault. But even assuming these "claims" constitute notice within the meaning of § 40-d, they would not alter the outcome because they were filed on October 7, 2020, *after* Plaintiffs commenced this action. (*See* Dkt. No. 1 (complaint filed Sept. 29, 2020)).

### I. NYSHRL Claim

**\*13**    In their Seventh Cause of Action, Plaintiffs allege that Defendants' "conduct herein denied Plaintiffs the equal protection of the law, discriminated against them and caused injuries, in violation of the ... New York Human Rights Laws." (Dkt. No. 21-1, ¶¶ 128–29). Defendants seek dismissal of this claims on the ground that as Plaintiffs do not allege principal liability against OCFS, they fail to allege aiding and abetting liability against the individual defendants. (Dkt. No. 13-7, at 27–28). Plaintiffs have not responded to this argument.

In their initial motion, Defendant OCFS, a state agency, moved to dismiss the claims against it, arguing—correctly—that New York has not waived its Eleventh Amendment

immunity against NYSHRL suits for damages in federal court. (Dkt. No. 13-7, at 13). [15] Apparently acknowledging this impediment to suit against the OCFS, Plaintiffs have not named the OCFS as a defendant in the proposed amended complaint. (Dkt. No. 21-1; Dkt. No. 21-2, at 8). They do, however, continue to assert NYSHRL claims against the individual Defendants. (Dkt. No. 21-1, ¶ 129). Defendants argue that the proposed amended complaint's NYSHRL claims are futile because without liability against the principal, the OCFS, "no 'aiding and abetting' cause of action lies. (Dkt. No. 22, at 19–20). "[T]he liability of an employer must be established as a predicate to individual liability for aiding and abetting" under the NYSHRL. *De Figueroa v. New York*, 403 F.Supp.3d 133, 163 (E.D.N.Y. 2019).

[15]    The Supreme Court has long held that the Eleventh Amendment bars all federal court claims against states, including by the states' own citizens, absent their consent to such suit or an express statutory waiver of immunity. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142–47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001). And "New York State has not consented to be sued in federal court under the NYSHRL." *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (citing *Pennhurst*, 465 U.S. 89, 99 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Lambert v. N.Y. State Office of Mental Health*, No. 97-cv-1347, 2000 WL 574193, at *7, 2000 U.S. Dist. LEXIS 5197, at *20 (E.D.N.Y. Apr. 24, 2000)). Thus, OCFS is entitled to Eleventh Amendment immunity against suit in federal court under the NYSHRL.

According to the proposed amended complaint, Defendants are employees of both the State of New York and Taberg, which "has been designated by OCFS as a limited secure facility" for juveniles. (Dkt. No. 21-1, ¶¶ 15, 20, 22, 23, 24). To the extent the proposed amended complaint alleges that Defendants aided and abetted OCFS or the state, Plaintiffs fail to state a plausible claim for relief under the NYSHRL for failure to allege liability against the OCFS.

*See De Figueroa*, 403 F. Supp. 3d at 164 (explaining that "Plaintiff must first establish a viable claim of liability against the University under ... the NYSHRL; only then could she assert claims against Individual Defendants ... for aiding and abetting violations of the NYSHRL," but that "because the University and New York State are immune from NYSHRL suits under the Eleventh Amendment," the plaintiff's "claims against Individual Defendants under the NYSHRL must be dismissed"). Accordingly, the Court concludes that Defendants are entitled to dismissal of the NYSHRL claims and any amendment to assert claims that the individual Defendants aided and abetted OCFS in violations of the NYSHRL would be futile. [16]

[16]   Defendants argue that Taberg is "not a legal entity in any capacity," and "has no legal existence" (Dkt No. 13-7 at 9, n.1). Thus, it appears any amendment to add Taberg as a principal for purposes of a NYSHRL aiding and abetting claim may be futile.

### J. Remaining State Law Claims

**\*14**  In addition to the above, Plaintiffs assert causes of action for: assault and battery, harassment, intentional and negligent infliction of emotional distress, negligent screening, training, hiring, and retention, negligence, and respondeat superior. [17] (Dkt. No. 21-1, ¶¶ 110–44).

[17]   Defendant OCFS has moved to dismiss these claims to the extent they are asserted against it on grounds of immunity. As Plaintiffs have withdrawn their claims against OCFS, Defendant OCFS's motion is denied as moot. Defendants have not otherwise moved to dismiss those claims.

For the same reasons the Court allows the § 1983 sexual and physical abuse claims to proceed, the Court finds that the proposed amendment as to the assault and battery, harassment, and intentional and negligent infliction of emotional distress claims would not be futile. Accordingly, Plaintiffs' cross-motion to amend with respect to these claims is granted.

The negligent screening, training, hiring, and retention, negligence, and respondeat superior claims identify the "State of New York through Taberg" as the responsible party and do not refer to any named Defendant. (*Id.* ¶¶ 123, 121, 139, 143). Plaintiff has withdrawn Taberg as a defendant and the State of New York is not named as a Defendant in this case. And, in any event, to the extent these claims are asserted

against the State of New York, they are barred by the Eleventh Amendment. Accordingly, Plaintiffs' cross-motion to amend is denied as futile with respect to these claims.

### K. Leave to Amend

D.B.'s § 1983 claims are barred by the statute of limitations, and there is no reason to believe that better pleading could cure this defect, those claims must therefore be dismissed with prejudice. But because Plaintiffs may be able to cure the above-described defects with better pleading, the Court has provided Plaintiffs with an opportunity to seek leave to file a motion to amend the complaint.

### V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) and Plaintiffs' cross-motion to amend (Dkt. No. 21) are **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiffs' claims against Defendants OCFS and Taberg, [18] as well as their § 1983 First Amendment retaliation, denial of equal protection, and failure to intervene claims are deemed withdrawn; and it is further

[18]   Taberg has not yet appeared in this action and no attorney has appeared on its behalf.

**ORDERED** that Defendants' motion to dismiss D.B.'s § 1983 claims is **GRANTED**, Plaintiffs' cross-motion to amend as to D.B.'s § 1983 claims is **DENIED** as futile, and D.B.'s § 1983 claims are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend the complaint to add Tillino as a defendant is denied as futile; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiffs' claims under the New York State Constitution, New York Civil Rights, and NYSHRL is granted; Plaintiffs' cross-motion to amend as to their New York State Constitution, New York Civil Rights, and NYSHRL claims is denied as futile, and it is further

**ORDERED** that the New York State Constitution claim is **DISMISSED with prejudice**; and it is further

2021 WL 2826457

**ORDERED** that the New York Civil Rights and NYSHRL claims are **DISMISSED without prejudice to repleading**; and it is further

 **\*15**  **ORDERED** that Plaintiffs' cross-motion to amend as to their assault and battery, harassment, and intentional and negligent infliction of emotional distress claims is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend as to their negligent screening, training, hiring, and retention, negligence, and respondeat superior claims is **DENIED** as futile; and it is further

**ORDERED** that Plaintiffs are directed to file their amended complaint, modified in accordance with this Memorandum-Decision and Order, by July 20, 2021; and it is further

**ORDERED** that the parties are directed to confer on the following issues and file status reports. In their status report due by July 27, 2021, Plaintiffs must indicate (1) whether they seek to file a second motion to amend the complaint with respect to Tillino, the New York Civil Rights Law claims, i.e., whether they can establish prior notice to the Attorney General, and the NYSHRL claims, and if so submit a proposed second amended complaint, and (2) whether Plaintiffs intend to continue this action against Defendant Diego, and if so, whether service has been effected. In their response due by August 10, 2021, Defendant must indicate whether they intend to file a second motion to dismiss and whether they will seek to dismiss D.B.'s state law claims on supplemental jurisdiction grounds. The Court will, if necessary, schedule a telephone conference to discuss these issues and/or set a briefing schedule once the parties have filed their status reports.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2826457

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

795 Fed.Appx. 70 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Sayyid D. MUHAMMADALI, Plaintiff-Appellant,

v.

CITY OF NEW YORK, P.O Solis, Tax Reg.
943832, Sgt. Honstetter, Tax Reg. 936777, Sgt.
Cordiner, Tax Reg. 929940, P.O Baruccheri,
Tax Reg. 952448, Defendants-Appellees.

18-1981
|
February 28, 2020

Appeal from the United States District Court for the Eastern
District of New York (Kuntz, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of said District Court be and it hereby is
**AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Sayyid D. Muhammadali, pro se, Far
Rockaway, NY.

For Defendants-Appellees: No appearance.

Present: ROSEMARY S. POOLER, GERARD E. LYNCH,
MICHAEL H. PARK, Circuit Judges.

**\*71  SUMMARY ORDER**

Appellant Sayyid D. Muhammadali, proceeding pro se,
appeals from the judgment entered on April 6, 2018, of the
United States District Court for the Eastern District of New
York (Kuntz, *J.*) sua sponte dismissing his complaint under
42 U.S.C. § 1983 as time-barred. We assume the parties'
familiarity with the underlying facts, procedural history, and
specification of issues for review.

We review a sua sponte dismissal de novo. *See J.S. v. T'Kach,*
714 F.3d 99, 103 (2d Cir. 2013). For substantially the
same reasons set out by the district court in its opinion dated April
4, 2018, we conclude that the district court properly dismissed
Muhammadali's claims as time-barred. Ordinarily, a district
court should not sua sponte dismiss an action as time-barred
without giving the plaintiff notice and opportunity to be heard
as to potential affirmative defenses. *Abbas v. Dixon,* 480 F.3d
636, 640 (2d Cir. 2007). Here, however, as in *Abbas,* a remand
to permit Muhammadali to replead or otherwise address the
statute of limitations issue would be futile. Muhammadali was
made aware of the limitations issue by the district court ruling,
and was specifically questioned at oral argument as to any fact
or legal theory that might warrant tolling of the limitations
period. Neither in his brief on appeal nor at oral argument did
Muhammadali identify any legal basis for tolling.

Muhammadali argues on appeal that his counsel in the state
court proceedings in which he first brought his claims was
negligent, and that the time it took to discover counsel's
negligence and bring his claims in federal court should toll the
statute of limitations. This Court applies a state's tolling rules
in a § 1983 action unless those rules would defeat the goals
of § 1983. *Id.* at 641. Under New York law, Muhammadali
is responsible for the "negligent and wrongful acts" of his
attorney within the scope of that attorney's representation
of him. *Poucher v. Blanchard,* 86 N.Y. 256, 260 (1881);
*accord Dep't of Soc. Servs. on Behalf of Beatrice V.P. v.
Trustum C.D.,* 97 A.D.2d 831, 831, 468 N.Y.S.2d 908 (1983),
*leave denied,* 61 N.Y.2d 605, 473 N.Y.S.2d 1026, 462 N.E.2d
156 (1984) ("[I]t is well settled in civil litigation that an
attorney's errors or omissions are binding on the client absent
extraordinary circumstances such as the attorney's mental
illness." (internal citations omitted)). Because Muhammadali
is bound by the negligent actions of his attorney, he cannot
avoid the consequences of his attorney's conduct, including
the choice of a state rather than a federal forum. As a result,
Muhammadali's federal claims are barred by the statute of
limitations.

We have considered the remainder of Muhammadali's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

**All Citations**

795 Fed.Appx. 70 (Mem)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.